## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18-cr-30071 |
| | ) |
| TIMOTHY R. HANNAH, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and

Recommendation on Defendant Timothy R. Hannah's Amended Motion to

Suppress Evidence (d/e 25) (Motion to Suppress), Motion to Dismiss

Indictment for Failure to Preserve Exculpatory Evidence or in the

Alternative to Preclude the Use of Tracy Stogdill's Statements and for an

Adverse Inference Instruction (d/e 21) (Motion to Dismiss Indictment), and

Motion to Dismiss Counts 1-5 as Multiplicitous (d/e 23) (Motion to Dismiss

Counts) (collectively the Motions).  The Court conducted a hearing in this

matter on October 13, 2020 (Hearing).  The Defendant appeared

personally and with his attorneys Federal Public Defenders Elisabeth R.

Bollock, Thomas A. Drysdale, and George F. Taseff.  The Government

appeared by Assistant United States Attorneys Tanner K. Jacobs and

Gregory M. Gilmore.  On December 4, 2018, a grand jury indicted Hannah with five counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and one count seeking forfeiture of certain property pursuant to 18 U.S.C. § 2253.  Indictment (d/e 1).  The Motion to Dismiss Counts is based on the allegations on the face of the Indictment.  The Motion to Suppress and Motion to Dismiss Indictment are based on facts related to searches of Hannah's electronic devices pursuant to four Warrants.  For the reasons set forth below, the Motion to Suppress should be ALLOWED in part and DENIED in part, the Motion to Dismiss Indictment should be DENIED and the Motion to Dismiss Counts should be ALLOWED in part and DENIED in part.

## STATEMENT OF FACTS

Much of the evidence against Hannah was found on electronic devices owned by Hannah.  Law enforcement officials acquired the electronic devices in March, April, and May 2016.  One of the Warrants sought evidence of drug trafficking and possession of child pornography.  The other three Warrants only sought evidence of possession of child pornography.  Three of the four searches produced evidence of possession of child pornography.  The Court discusses certain background events in 2015 and then discusses the four Warrant applications and the relevant

facts related to the Warrant applications and the resulting searches and seizures.

A.    BACKGROUND EVENT IN 2015

On June 9, 2015, approximately nine months before the first warrant application, Dewitt County, Illinois, Sheriff's Office Detective and Illinois State Police Task Force 6 (Task Force) Officer Luke Werts received a NEXTbook tablet computer (NEXTbook) from Clinton, Illinois, Police Detective Ummel.  Detective Ummel reported that on June 2, 2015, an individual named Tracy Stogsdill turned over the NEXTbook to the Clinton, Illinois, Police department because she believed the NEXTbook contained child pornography downloaded by Hannah.  Stogdill stated that Hannah used the NEXTbook frequently while he lived with her at her residence located at 1504 E. South Street, Clinton, Illinois (the Residence).  Detective Ummel turned the NEXTbook over to Werts because the Residence was in Dewitt County outside the city limits of Clinton, Illinois.  Werts secured a search warrant to search the NEXTbook for child pornography.  On June 12, 2015, Werts took the NEXTbook to Decatur, Illinois Police Detective David Dailey.  Detective Dailey determined that the NEXTbook had an app called Gallery Vault on it.  Detective Dailey stated that Gallery Vault was an app used to conceal data.  Defendant's Reply in Support of His Motion to

Suppress Evidence (#25) and Motion to Dismiss Indictment (#21) (d/e 33) (Reply), Exhibit A, DeWitt County Sheriff's Office Incident/Offense Report 1-15-001142.

B.      WARRANT 1 DATED MARCH 17, 2016

On March 9, 2016, Hannah was arrested on state charges related to the manufacture of methamphetamine.  At that time, the officers took possession of Hannah's ZTE model Z667G Serial #9B0428813371 cellular phone (Hannah Phone) and a removable storage device (SD Card) attached to the Hannah Phone.  On March 17, 2016, Werts submitted a complaint and affidavit in support of a request for a search warrant to search the Hannah Phone and the SD Card (Warrant 1).[1]  Motion to Suppress, Exhibit 1, Warrant 1 and Warrant 1 Complaint.  Werts asked for a warrant to search for:

> C. Items or Material to be seized:
> - Any and all evidence of the distribution and manufacturing of illegal drugs, including but not limited to e-mails, texts, word documents, private messages, and call logs
> - Any and all evidence of the acquisition and/or distribution of child pornography including but not limited to videos, pictures, internet history, and previously deleted files

Warrant 1 Complaint, at 000019.[2]

_____

[1] Werts' title apparently changed due to his participation in an Illinois State Police Task Force.
[2] The Court cites to the Bates Stamp pagination on the Exhibits filed with the Motions.  The Court uses the original document page number of Exhibits admitted at the Hearing.

Werts stated in the Warrant 1 Complaint that on March 8, 2016 an Illinois Conservation Police Officer contacted Werts about a fire at Weldon Springs State Park in DeWitt County (Park).  Maintenance workers saw the fire and a white man and woman with a black and white dog leave the area of the fire in a dark red Chevrolet four door sedan.  Werts stated that he remembered from "prior law enforcement investigations" that Stogsdill drove a maroon Chevrolet Cobalt sedan.  Werts and Task Force Inspector Sean Freytag spoke to Stogdill.  Stogdill told Werts and Freytag that Hannah wanted her to drive him out to the country to burn items earlier that day.  Id.

Werts stated that Stogdill voluntarily came to the DeWitt County Sheriff's Office (Sheriff's Office) to be interviewed.  Stogdill waived her Miranda rights before the interview began.  Stogdill said that she took Hannah to the Park that day and took her dog along.  Stogdill said that Hannah initially did not tell her what he wanted to burn except that he could not just place it in a dumpster.  Stogdill said she smelled ammonia once the item started to burn.  At that point she said that Hannah told her it was a "lab."  She confirmed that the term "lab" meant a "shake and bake cook" bottle used to manufacture methamphetamine.  Werts stated that Stogdill told Werts and Freytag that Hannah did not cook in front of her, but he kept

his methamphetamine bottle with him.  She described how Hannah

acquired products including lye, salt, Coleman fuel, and ice packs, to

amass the necessary ingredients to make methamphetamine.  She said

that Hannah sold the methamphetamine for $100 a gram.  Warrant 1

Complaint, at 000019-20.

Werts stated further in the Warrant 1 Complaint:

> After describing the meth cook operation, Stogdill informed Werts she had found pictures of young naked girls on her phone.  She said Hannah obtains images on her phone and then sends them to his phone.  According to Stogdill Hannah uses the wireless connection at the Casey's parking lot to accomplish this.

> On March 9, 2016 Timothy Hannah was interviewed.  He admitted being in the area of the park where the fire took place, but denied burning anything.  He confirmed the information given by the maintenance workers, admitting to arriving with Stogsdill and the dog in the maroon Chevrolet Cobalt.  Hannah denied having any knowledge of producing methamphetamine and requested an attorney.  Stogsdill gave consent to search her phone on the 14th of March, but all data had been erased.  Illinois State Police technicians are currently attempting to retrieve previously deleted data on the phone.

Warrant 1 Complaint, at 000020.

On March 17, 2016, a DeWitt County Associate Circuit Judge issued

Warrant 1.  Warrant 1 authorized the search of the Hannah Phone and the

SD Card and the seizure of the items requested in the Warrant 1 Complaint

and quoted above.  Warrant 1.

The Parties agree that Werts omitted from the Warrant 1 Complaint the following information regarding Stogsdill's consent to the search of her phone (Stogsdill Phone) and the deletion of the data on the Stogsdill Phone:  On March 14, 2016, Stogsdill met with Werts at the Sheriff's Office. During this encounter, Werts asked Stogdill for consent to search the Stogsdill Phone for potential child pornography.  Stogdill agreed to the search but stated that the Stogsdill Phone was at home.  Werts told Stogdill not to erase anything from the Stogsdill Phone.  Stogdill stated that some things had already been erased.  Werts told Stogsdill that there was a possibility of recovering erased items.  Stogsdill went home, retrieved the Stogsdill Phone, and brought the Stogsdill Phone back to Werts at the Sheriff's Office.  Werts turned on the Stogsdill Phone later that day.  The Stogsdill Phone was in startup mode with 1% power. Motion to Suppress, at 5; Government's Combined Response to Defendant's Motions to Suppress Evidence and Statements (R.25, 20); Motion to Dismiss Indictment (R.21); Motion for Production of Brady/Giglio Materials (R.22); and Motion to Dismiss Counts 1-5 as Multiplicitous (R.23) (d/e 30) (Response), at 7.  On March 15, 2016, Stogsdill met with Werts and Freytag at the Circle K gas station in Clinton, Illinois.  Werts asked Stogsdill if she conducted a factory reset on the Stogsdill Phone, thereby erasing

everything from the phone.  Stogsdill confirmed that she conducted a factory reset because Werts told her that anything erased from the Stogsdill Phone could be recovered.  Stogsdill said she did not want to go to jail. Werts told Stogsdill that she may have erased potential evidence from the Stogsdill Phone by resetting it.  Motion to Suppress, at 6, Response, at 7.

Werts also omitted from the Warrant 1 Complaint the fact that Stogsdill had previously been convicted of two felonies and two misdemeanors involving crimes of dishonesty.  Response, at 8.  Werts also did not mention the prior 2015 incident in which Stogsdill brought him the NEXTbook.

On March 23, 2016, DeWitt County Sheriff's Office Detective Pippin retrieved the NEXTbook from the Illinois State Police Computer Evidence Recovery Unit and transported it to the DeWitt County evidence vault. Werts reviewed a report from Jeff Knauer of the Illinois State Police Computer Evidence Recovery Unit about the contents of the NEXTbook. Knauer determined that the NEXTbook contained pornography, but no sign of child pornography.  Reply, Exhibit A, DeWitt County Sheriff's Office

Incident/Offense Report 1-15-001142, Supplemental Report dated May 2,

2016.[3]

C.    WARRANT 2 DATED APRIL 7, 2016

On April 7, 2016, Werts applied for a second search warrant (Warrant

2).  Motion to Suppress, Exhibit 2, Warrant 2 and Warrant 2 Complaint.

Werts asked for a warrant to search a Compaq Presario M2000 computer

with serial number CN5311683 (Compaq Computer) obtained from

Stogsdill as described below.  Werts asked to search for the following:

> Items or Materials to be seized:
> Articles and things which have been used in the commission
> of, or which constitute evidence of, the offense of Child
> Pornography, 720 ILCS 5/11-20.1, including but not limited
> to:
>
> - **Proof of access, control and/or ownership of the of
>   the aforementioned Compaq Presario M2000
>   computer, such as hardware and software licenses
>   and other indicia of Timothy Hannah's activity on
>   the computer;**
> - **Computer hardware;**
> - **Computer software documentation, passwords,
>   data security devices;**
> - **Data documenting internet sites visited;**
> - **E-mails sent and received and data documenting
>   e-mails sent and received;**
> - **Cellular phone sync files, data or documents
>   stored or contained within the computer;**

---

[3] Hannah disputes whether Werts saw Knauer's report prior to March 23, 2016.  See Defendant's Sur-Sur-Reply to the Government's Sur-Reply (#34) and in Support of His Pending Motions (d/e 36), at 2-5. Hannah's arguments are not persuasive.  Furthermore, Hannah cites the information in Knauer's report as a basis for his request for a Franks hearing.  Knauer's report is not material to resolving Hannah's request for a Franks hearing for the reasons set forth below.

**Photography, digital images and video recordings of a child pornography nature stored or contained within the computer.**

Warrant 2 Complaint, at 000061 (emphasis in the original).

Werts stated in the Warrant 2 Complaint that Hannah was arrested on March 9, 2016 and charged with Methamphetamine Manufacturing Waste, an Illinois Class 2 felony.  Werts stated the Hannah Phone was taken from Hannah incident to his arrest.  Hannah admitted that he owned the Hannah Phone.  Werts stated that Warrant 1 was secured to search the "contents of said phone."  Werts stated,

> The return of the search warrant for the contents of said cell phone showed numerous still photos of naked female children in sexually explicit positions as well as videos of naked female children engaged in sexual acts.  Said children appear to be under 18 years of age and many of which appear to under 13 years of age.

Warrant 2 Complaint, at 000062.  Werts stated that Hannah lived with Stogsdill prior to his arrest.  Werts stated that Stogsdill stated in an interview that "she had previously seen what she believed to be child porn on Defendant's cell phone."  Stogsdill told Werts that there were three additional cell phones at her home.  Id.

Werts stated that on April 5, 2016, Werts met with Stogsdill at the Residence to ask about the three additional cell phones.  Stogsdill said that she no longer had the phones.  Stogsdill, however, gave Werts the

Compaq Computer.  Stogsdill said that the Compaq Computer was
Hannah's property.  She said that she believed the Compaq Computer
contained child pornography.  Id.

On April 7, 2016, a DeWitt County Associate Circuit Judge issued
Warrant 2.  Warrant 2 authorized the search of the Compaq Computer and
seizure of the items requested in the Warrant 2 Complaint quoted above.
Response, Exhibit 2, Warrant 2.

## D.    DELIVERY OF STORAGE DEVICES ON MAY 5, 2016

On May 5, 2016, Stogsdill went to the Sheriff's Office.  She met with
Detective Pippin.  Stogsdill said she was cleaning the Residence and found
two pouches hidden in a cabinet on a ledge.  She also said that the
pouches were in a common area of the Residence.  She said that the
pouches contained seven electronic storage devices (Storage Devices): a
black SanDisk thumb drive with "PRIVET" written on the back, a black
SanDisk Cruzer Glide 32 GB thumb drive, a black Monster Digital OTG 16
GB thumb drive with orange paint on the back, a green and gray PNY
Prime Performance 64 GB micro SD card, a red and gray SanDisk Ultra
Plus 16 GB micro SD card, a black SanDisk 4 GB micro SD card, and a
black 4 GB micro SD car with no brand information.

Stogsdill told Pippin that she had ended her relationship with Hannah. Stogsdill said the Storage Devices did not belong to her and she feared that they contained child pornography. Stogsdill said she was turning the Storage Devices over to law enforcement of her own free will. She said she had no clue what information was contained in the devices. Detective Pippin reviewed one of the Storage Devices, a thumb drive. Detective Pippen determined that the footage appeared to be child pornography. Detective Pippen did not search any further at that time. He alerted the DeWitt County States Attorney's Office. Detective Pippin later learned that the FBI was investigating Hannah. On May 6, 2016, Pippin told FBI Special Agent Anthony Manganaro about the existence of the Storage Devices. Pippin put the Storage Devices with the existing items of evidence for Hannah in the possession of the DeWitt County Sheriff's Office. Reply, Exhibit B, DeWitt County Sheriff's Office Incident/Offense Report 1-16-001034.

FBI Special Agent Anthony Manganaro took possession of the Storage Devices on May 20, 2016. See Hearing Exhibit 5, Manganaro Timeline, at 1. Manganaro was responsible for the FBI's investigation of Hannah. Manganaro was stationed at the Champaign, Illinois, Resident Agency (Champaign Office) from November 2014 until he was transferred

in March 2018.  The Champaign Office covered 13 counties in east central Illinois. The Champaign Office was under Springfield FBI Field Office.  The number of agents assigned to the Champaign Office varied from two to six agents during Manganaro's tenure there.  Manganaro primarily worked violent crimes against children (sometimes referred to as VCAC).   See Hearing Transcript (d/e 46), at 8-10, 14.

E.    WARRANT 3 DATED JUNE 7, 2016

On June 7, 2016, Manganaro applied for a Search Warrant to this Court.  Motion to Suppress, Exhibit 3, Application for Search Warrant (Warrant 3 Application) and Search and Seizure Warrant (Warrant 3). Manganaro sought Warrant 3 to search the Hannah Phone and the Compaq Computer.  Manganaro recited how Stogsdill stated that she saw images of young naked girls on her Stogsdill Phone and that Hannah transferred such images from the Stogsdill Phone to the Hannah Phone. Manganaro recited that Hannah admitted owning the Hannah Phone at the time of his arrest.  Manganaro recited that a state court judge issued Warrant 1 to search the Hannah Phone and the SD Card.  Manganaro stated that state officers who attempted to search the Hannah Phone could not because the Hannah Phone was passcode protected.  Manganaro stated that federal investigators had the resources to disable the

passcodes and access the data on the Hannah Phone.  <u>Warrant 3</u>
<u>Application</u>, at 000074.

Manganaro stated that state law enforcement officials were able to
search and seize the data on the SD Card pursuant to Warrant 1.
Manganaro stated that the SD Card contained 20 images of child
pornography.  Manganaro described in detail the depictions of child
pornography in three of these images.  Manganaro also stated that the SD
Card contained 18 images of child erotica, naked juvenile and/or
prepubescent children in non-sexual poses.  <u>Warrant 3 Application</u>, at
000075.

Manganaro recited that Stogsdill turned over the Compaq Computer
stating that Hannah used it.  Manganaro stated that a state court judge
issued Warrant 2 to search the Compaq Computer.  Manganaro indicated
that the Compaq Computer was not searched because it was passcode
protected.  Manganaro stated that he believed federal officials could
disable the passcode and gain access to the data on the Compaq
Computer.  <u>Warrant 3 Application</u>, at 000075-76.

Manganaro stated that Hannah was a registered sexual predator with
a prior conviction in Florida in 2011 for possession of child pornography.
<u>Warrant 3 Application</u>, at 000076.  Manganaro also discussed Hannah's

statements in an interview on April 8, 2016.  The Government has agreed
not to use the contents of those conversations in this case.  The Court,
therefore, will not consider that information in evaluation of the Warrants.

On June 7, 2016, this Court issued Warrant 3 to authorize the search
of the Hannah Phone and the Compaq Computer.  Warrant 3.

F.   EVENTS BETWEEN WARRANT 3 AND WARRANT 4

Manganaro but did not seek authority in Warrant 3 to search the
Storage Devices.  However, the Storage Devices remained in the
possession of the FBI until the fourth warrant (Warrant 4) was issued on
October 17, 2018.  Throughout the approximately two years and five
months from May 5, 2016 to October 17, 2018 (895 days), Hannah
remained in either state or federal custody.  Hannah did not ask, either
directly or through a representative, for the return of the Storage Devices
throughout this period.  The Court has not been presented with any
evidence that Hannah knew law enforcement officials had possession of
the Storage Devices before Warrant 4 was issued.

Manganaro did not include the Storage Devices in the Warrant 3
application because he and the Assistant United States Attorney decided
that Manganaro should speak to Stogsdill again before seeking a search
warrant for the Storage Devices.  Hearing Transcript, at 27.  Manganaro,

however, never attempted to contact Stogsdill before he was transferred in March 2018.

In March 2018, Manganaro was transferred to FBI headquarters for reassignment. FBI Special Agent Michael Carter thereafter took over responsibility for the case against Hannah. On October 17, 2018 Carter prepared the application for Warrant 4. Carter never spoke to Stogsdill before preparing the Application for Warrant 4. Carter never intended to speak to her before preparing the application. Hearing Transcript, at 148.

The evidence adduced at the Hearing showed that Manganaro and Carter were often busy with other cases from May 2016 to October 2018. The Government admitted into evidence at the Hearing timelines prepared by Manganaro and Carter. Hearing Exhibits 5 and 6 (Timelines). The Timelines showed that Manganaro and Carter were each investigating several other cases from May 2016 to October 2018. Manganaro investigated several VCAC cases in which law enforcement believed the suspect was actively abusing children. Manganaro gave those cases high priority because of the need to stop ongoing abuse. In contrast, Hannah did not pose an immediate threat to any child because he was in state custody. Manganaro at one point traveled to Nepal to investigate a United States citizen who was sexually abusing minors in Nepal. Manganaro also

participated in the investigation and trial of defendant who had abducted and murdered a foreign national from China named Yingying Zhang. Zhang had been a visiting scholar at the University of Illinois at the time of her abduction.  The investigation and trial took up significant amounts of Manganaro's time.  In addition, Manganaro was assigned to train new FBI agents assigned to the Champaign Office during the relevant period.  See generally, Hearing Transcript, at 14-86, 121-41.  When Carter took over the Hannah case, he was already heavily involved in an ongoing investigation of a violent crime and drug investigation that involved gang activity, drugs, and possible connection to a double homicide.  Carter spent 80 percent of his time on this matter.  That investigation was completed in mid-September 2018.  See Hearing Transcript, at 122-25.

The Timelines show that Manganaro and Carter spent significant time in training.  Manganaro was also required to act as temporary office supervisor from time to time.  The Timelines also did not account for Manganaro and Carter's time on many business days when each was responsible for the Hannah investigation from May 2016 to October 2018. Counsel for Defendant asserted at the hearing that the Timelines did not account for Manganaro's activities for 288 working days when was responsible for the Hannah investigation and did not account for Carter's

activities for 136 working days when he was responsible for the Hannah investigation.  See Hearing Transcript, at 91-92, 149.  The Court has not attempted to verify counsel's count, but it is clear that the Timelines do not account for Manganaro and Carter's activities on many working days between May 2016 October 2018.

According to Manganaro and Carter's testimony at the Hearing, preparing a warrant application generally took one to five hours.  See Hearing Transcript, at 96, 143.  An Assistant United States Attorney would generally arrange to present a warrant to a federal judge.  Hearing Transcript, at 97-98.  Manganaro also agreed that he had never heard of even a 500-day lapse of time from the date that a device was seized and the date that a warrant application was filed.  Hearing Transcript, at 109.

G.    WARRANT 4 OCTOBER 17, 2018

On October 17, 2018, Agent Carter submitted an Application for Search Warrant, Affidavit in Support of Search Warrant (Warrant 4 Affidavit) and a proposed Search and Seizure Warrant to this Court.  Carter submitted the Affidavit to secure a warrant to search the Storage Devices. Carter recited substantially the same information regarding the basis for the Affidavit that Manganaro recited in the Warrant 3 Application.  Motion to Suppress, Exhibit 4, Warrant 4 Affidavit, at 000172-73.  Carter added that

the search pursuant to Warrant 3 turned up a "voluminous amount of child exploitative material" on the Compaq Computer.  Carter said the material was sent to the National Center for Missing and Exploited Children for review.  The review showed that the Compaq Computer contained child pornography files from 39 previously identified series.  Carter then described in detail three of the images of child pornography.  Warrant 4 Affidavit, at 000174-76.

Carter stated that Stogsdill delivered the Storage Devices to Detective Pippin at the Sheriff's Office.  Carter indicated Stogsdill said she found the Storage Devices in a common area of the Residence and that she was turning them over of her own free will.  Carter stated that Detective Pippen kept the devices at the Sheriff's Office and contacted Manganaro. Carter said Detective Pippin agreed that the Storage Devices should be turned over to the FBI.  Carter noted the Storage Devices remained at the Sheriff's Office until May 20, 2018, when Manganaro took possession of them.  Carter said that the Storage Devices were in the FBI Springfield Office evidence control room.   Warrant 4 Affidavit, at 000176-78,

Carter also noted that Hannah was in state custody.  Upon review of the showing, this Court issued Warrant 4 to search the Storage Devices. Motion 25, Exhibit 4, Warrant 4 at 000165.

## THE INDICTMENT

On December 4, 2018, a grand jury indicted Hannah with five counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and one count seeking forfeiture of specified property pursuant to 18 U.S.C. § 2253.  Indictment (d/e 1).  Count 1 alleged that on or about March 9, 2016, in Dewitt County, Illinois, Hannah possessed child pornography on the SD Card attached to the Hannah Phone.  Count 2 alleged that on or about March 9, 2016, in DeWitt County, Illinois, Hannah possessed child pornography on the Compaq Computer.  Count 3 alleged that on or about March 9, 2016, in DeWitt, County, Illinois, Hannah possessed child pornography on one of the Storage Devices, the Red and gray SanDisk Ultra Plus 16 GB micro SD card. Count 4 alleged that on or about March 9, 2016, Hannah possessed child pornography on another one of the Storage Devices, the Black SanDisk thumb drive with the word "PRIVET" on it. Count 5 alleged that on or about March 9, 2016, in DeWitt County, Illinois, Hannah possessed child pornography in a third Storage Device, the Black Monster Digital OTG 16 GB thumb drive with orange paint on back.

ANALYSIS

Hannah has filed the Motions to suppress evidence and dismiss the Indictment.  The Court addresses each Motion separately.

MOTION TO SUPPRESS

Hannah seeks to suppress all the evidence found pursuant to the execution of Warrants 1, 3, and 4 (the Warrants).  No evidence was found pursuant to Warrant 2; thus, Hannah's request to suppress evidence found pursuant to Warrant 2 is moot.

A search performed pursuant to a warrant is presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978); Archer v. Chisholm, 870 F.3d 603, 613-14 (7th Cir. 2017).  Hannah bears the burden of establishing that each of the Warrants was not supported by probable cause. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Grubb, 547 U.S. 90, 95 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  A search will be upheld as long as the issuing judge, "had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing."  United States v. Reichling, 781 F.3d 883, 886 (7th Cir. 2015) (quoting United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010).  The Court addresses each Warrant separately.

WARRANT 1

The Warrant 1 Complaint contained enough information to establish probable cause to search the SD Card for evidence of distribution and manufacturing of illegal drugs.  Hannah does not dispute this.  When a warrant authorizes law enforcement officials to search digital storage media for evidence of a particular crime, in this case distribution and manufacturing of illegal drugs, law enforcement officials are authorized to search every digital file in the device to look for such evidence:

> Just so with this warrant. It permits the search of every document on the cell phone, which (like a computer) serves the same function as the filing cabinets in Andresen's office. See *Riley v. California*, ─── U.S. ────, 134 S.Ct. 2473, 2489, 189 L.Ed.2d 430 (2014). And as with filing cabinets, the incriminating evidence may be in any file or folder. That's why courts routinely conclude that warrants with wording similar to the one at issue here are valid. See, e.g., *Archer v. Chisholm*, 870 F.3d 603, 616 (7th Cir. 2017); *United States v. Hall*, 142 F.3d 988, 996–97 (7th Cir. 1998); Wayne R. LaFave, 2 *Search & Seizure* § 4.6(d) (5th ed. 2012 & Supp. 2018) (citing many other cases). It is enough, these decisions hold, if the warrant cabins the things being looked for by stating what crime is under investigation.

United States v. Bishop, 910 F.3d 335, 337 (7th Cir. 2018), cert. denied, __U.S.__, 139 S. Ct. 1590 (2019).  Werts and the other law enforcement officers who executed Warrant 1 were authorized to search every file on the SD Card for evidence of the distribution and manufacturing of illegal drugs.  During the course of that valid search, Werts and the other

officers discovered evidence of possession of child pornography.  Such evidence found during the course of such a valid search is not subject to suppression regardless of whether the Warrant 1 Complaint demonstrated probable cause to search for child pornography.  See United States v. Markling, 7 F.3d 1309, 1315 (7th Cir. 1993).  The Court, therefore, does not need to decide whether the Warrant 1 Complaint established probable cause to search the SD Card for child pornography.

Hannah argues that the Warrant only authorized searching for "e-mails, texts, word documents, private messages, and call logs" and so Werts and the other officers assisting him could only look in specific types of files in the SD Card typically associated with those types of information. He argues that the officer could not properly look at picture files and video files for these types of information.  Hannah relies on the Tenth Circuit case of United States v. Carey, 172 F.3d 1268 (10th Cir. 1999).  In Carey, an officer executed a search of a computer's files pursuant to a warrant authorizing a search for "names, telephone numbers, ledger receipts, addresses, and other documentary evidence" of drug trafficking.  The officer found child pornography in photo files with the extension ".jpeg." The Carey decision held that the search of .jpeg files was not authorized by a warrant for documentary evidence.  172 F.3d, at 1271-75.

The Carey decision does not apply here because it is inconsistent with the Seventh Circuit's Bishop decision and because the Tenth Circuit has limited Carey to its facts.  United States v. Loera, 923 F.3d 907, 917-19 (10th Cir. 2019); United States v. Burgess, 576 F.3d 1078, 1092-93 (10th Cir. 2009).   In Loera, the Court noted that the Carey holding turned on four specific facts (at 917-918).  The Tenth Circuit recognized in Burgess that law enforcement officials authorized by a warrant to search for documentary evidence are entitled to look in every file in a digital storage device for such evidence.  The Burgess Court noted that data such as documents may be stored electronically either as documents or as images, may be located in many different directories within a storage device, and may be stored in many different types of computer files with many different filenames and extensions.  As a result, searches of electronic storage devices should not be limited to specific types of files or directories.  "But in the end, there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders, and that is true whether the search is of computer files or physical files.  It is particularly true with image files."  Burgess, 576 F.3d at 1094.  The conclusion of the Tenth Circuit in Burgess is consistent with the Seventh Circuit's holding in Bishop that law enforcement officials can look

in every file on a digital storage device to search for evidence of a specific crime authorized by a valid warrant.

Hannah also relies on the Seventh Circuit's decision in United States v. Mann, 592 F.3d 779 (7th Cir. 2010).  The warrant in Mann authorized a search of digital media for evidence of surreptitiously recorded videos of adult women in various stages of undress in a women's locker room.  The officers used a flagging program designed to look for child pornography to search the defendant's computers.  The officers found four photographs of child pornography using that method.  The officer stopped using the flagging program and continued to search the computers and found additional child pornography.  The Mann case held that four pictures found by the flagging program were suppressed but all the other child pornography was admissible.  The Mann case agreed with the Burgess and Bishop decisions that officers could search for evidence authorized by the warrant in every file; they just could not use a program specifically designed to find evidence not authorized by the warrant.  All of the child pornography found in the Mann case, other than the four flagged images, were admissible.  Mann, 592 F.3d at 783-84.

Werts and the other officers assisting him in the search of the SD Card did not use a flagging program, so the Mann case does not apply.

Werts and the other officers executing Warrant 1 properly searched every file in the SD Card to look for evidence of distribution and manufacturing of illegal drugs.  Bishop, 910 F.3d at 337.  During that search, the officers found evidence of child pornography.  The evidence was found during the course of a valid search and is admissible.  See Markling, 7 F.3d 1309, 1315.  The child pornography is admissible regardless of whether the Warrant 1 Complaint provided enough information to provide probable cause to search the SD Card for child pornography.  The evidence of child pornography found in Search 1 should not be suppressed.

Hannah also seeks a hearing to establish that Werts intentionally and deliberately omitted material facts from the Warrant 1 Complaint in violation of Franks v. Delaware (Franks Hearing).  Hannah says that Werts intentionally omitted from the Warrant 1 Application:  Stogsdill's criminal history, Stogsdill's similar complaint in 2015 that Hannah had child pornography on the NEXTbook, and the details of how Stogsdill deleted all the data on the Stogsdill Phone.

To establish a right to a Franks Hearing, Hannah must make a preliminary substantial showing that "a false statement [or omission] knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and that the false statement

or omission was essential to the establishment of probable cause.  Franks, 438 U.S. at 155-56.  Here, Hannah does not challenge the sufficiency of the probable cause to support the Warrant 1 authorization to search for evidence of distribution and manufacture of illegal drugs.  The evidence of Hannah's possession of child pornography on the SD Card was properly found pursuant to the execution of this portion of Warrant 1.  The complained of omissions, therefore, did not affect the finding of probable cause that justified the search of the SD Card.  The evidence is admissible regardless of the information that Werts omitted from the Warrant 1 Complaint.  As a result, Hannah has failed to demonstrate a basis for a Franks Hearing.   The request for a Franks hearing should be denied.

WARRANT 3

Warrant 3 authorized the search of the Hannah Phone and the Compaq Computer for evidence of possession of child pornography. Hannah challenges whether Warrant 3 was supported by probable cause. To show probable cause, FBI Special Agent Manganaro had to demonstrate to this Court in the Warrant 3 Affidavit a probability or a substantial chance of criminal activity.  See Gates, 462 U.S. at 244; Reichling, 781 F.3d at 886.

The Warrant 3 Affidavit amply demonstrated probable cause.  The
Warrant 3 Affidavit showed that the SD Card was attached to the Hannah
Phone when officers took Hannah into custody on March 9, 2016.  Hannah
admitted the Hannah Phone was his.  The SD Card contained 20 images of
child pornography.  The Warrant 3 Affidavit described three of these
images in detail.  The Warrant 3 Affidavit established that Hannah was
previously convicted of possession of child pornography and was a
registered sex predator.  Stogsdill lived with Hannah at the Residence prior
to his arrest.  Stogsdill told officers that Hannah owned the Compaq
Computer and used the Compaq Computer often.  Stogsdill further told law
enforcement officials that Hannah transferred pictures of naked young girls
from her phone to his phone via an internet connection at the local Casey's
gas station.  All of this information was sufficient to establish probable
cause to conclude the reasonable likelihood of evidence of possession of
child pornography would be on the Hannah Phone and the Compaq
Computer.  Warrant 3 was supported by probable cause.

Hannah challenges Warrant 3 because it relies on the evidence found
in the search of the SD Card pursuant to Warrant 1.  As outlined above, the
evidence of possession of child pornography found in the search of the SD
Card was admissible.  The Warrant 3 Affidavit, therefore, could rely on that

evidence to show probable cause to search the Hannah Phone and the

Compaq Computer.  The evidence found on those devices, therefore, was

also admissible.

WARRANT 4

Warrant 4 is also supported by probable cause.  Warrant 4 authorized

the search of the Storage Devices for evidence of possession of child

pornography.  The Warrant 4 Affidavit recited all the information in the

Warrant 3 Affidavit to show the likelihood that Hannah possessed child

pornography on electronic digital files of the kind kept on the Storage

Devices.  The Warrant 4 Affidavit also stated that the Compaq Computer

contained voluminous quantities of child pornography including child

pornography files from 39 series that were previously identified by the

National Center for Missing and Exploited Children.  The Warrant 4

Affidavit also included detailed descriptions of three of the images of child

pornography found on the Compaq Computer.  The Warrant 4 Affidavit also

established that Stogsdill and Hannah lived together at the Residence prior

to Hannah's arrest on March 9, 2016.  Stogsdill stated that she found the

Storage Devices in pouches hidden in a cabinet on a ledge.  She said that

the pouches were in a common area of the Residence.  She indicated that

the Storage Devices were not hers and she believed that they belonged to

Hannah.  DeWitt County Sheriff's Office Detective Pippin looked at the images on one Storage Device and saw a picture that he believed was child pornography.  All of this evidence provided a more than ample basis to demonstrate a reasonable likelihood of evidence of possession of child pornography would be on the Storage Devices.  Warrant 4 is supported by probable cause.

Hannah questions whether FBI Special Agent Carter was qualified to investigate child pornography.  This argument is frivolous.  The detailed description of the images clearly show that Hannah's other electronic devices contained child pornography.  The National Center for Missing and Exploited Children identified that the Compaq Computer contained child pornography files from 39 previously identified series of child pornography.  Evidence of Carter's expertise is not necessary in light of all of the detailed evidence of child pornography on Hannah's other devices.

Hannah again challenges the reliance of evidence found in the execution of Warrant 1 in the Warrant 4 Affidavit.  For the reasons stated above, the evidence found on the SD Card in the execution of Warrant 1 was admissible.  The reliance on that evidence, therefore, was proper in the Warrant 4 Affidavit.  Warrant 4 was supported by probable cause.

Hannah argues that Warrant 4 is ineffective to avoid suppression of the evidence on the Storage Devices because Detective Pippin conducted a warrantless search of the Storage Devices when he looked at the data on one of the Storage Devices without a warrant.  The Government responds that Detective Pippin had Stogsdill's consent to search the Storage Devices when she voluntarily brought the Storage Devices to the Sheriff's Office.

Law enforcement officials may search property without a warrant when the officials have received valid consent to search.  United States v. Jackson, 598 F.3d 340, 346 (7th Cir. 2010).  A person who has common control over property may give valid consent to search the property:

> The consent of one who possesses common authority, or who appears to have common authority, over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared, because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.

Jackson, 598 F.3d at 346 (internal quotation marks and citations omitted).   The ability to rely on third-party consent to search derived from the principle that the defendant assumes the risk by allowing a third party to have common authority over property or effects:

> The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the

co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Jackson, 598 F.3d at 346 (quoting United States v. Matlock, 415 U.S. 164, 171 n. 7 (1974)).

The validity of a third party's consent to search a closed container turns on the officer's reasonable belief that the third party had authority to consent to the search of the contents of the container:

"For purposes of searches of closed containers, mere possession of the container by a third party does not necessarily give rise to a reasonable belief that the third party has authority to consent to a search of its contents." [United States v. Basinski, 226 F.3d 829, 834 (7th Cir. 2000)]. "Rather, apparent authority turns on the government's knowledge of the third party's use of, control over, and access to the container to be searched, because these characteristics are particularly probative of whether the individual has authority over the property." *Id.* Accordingly, we conduct a fact-specific inquiry to decide whether someone had actual or apparent authority to consent to a search. See [United States v. Groves, 530 F.3d 506, 509-10 (7th Cir. 2008)]; Basinski, 226 F.3d at 834-35 (observing that "it is less reasonable for a police officer to believe that a third party has full access to a defendant's purse or a briefcase than, say, an open crate").

Jackson, 598 F.3d at 347.  The facts here show that Hannah kept these Storage Devices in a common area of the Residence.  The Storage Devices were not marked with Hannah's name and the Storage Devices were not password protected or encrypted.  Hannah, therefore, knew that he left the Storage Devices in an area that Stogsdill had access to and he

knew that she could look at the data on them as she wished.  Under these circumstances, Detective Pippin could reasonably conclude Hannah assumed the risk that Stogsdill could look at the data on the Storage Devices.  As such, Detective Pippin reasonably concluded that Stogsdill had authority to let him look at the data on the Storage Devices.  Stogsdill had apparent authority to give consent.

Hannah argues that this case is governed by the decision in United States v. Basinski, 226 F.3d 829 (7th Cir. 2000).  The Court disagrees.  In Basinski, the defendant Basinski gave a friend, Friedman, a locked briefcase with instructions to hide the briefcase.  Basinski never gave Friedman the combination to the lock and never gave Friedman permission to open the briefcase.  Basinski further told Friedman to burn the briefcase when Basinski learned that the FBI tapped his telephone.  Friedman did not burn the briefcase.  Rather, he told law enforcement about the case and the circumstances under which he had possession of the case.  226 F.3d at 832-33.  Under those facts the FBI should have known that Friedman had no authority to consent to a search of the briefcase.  Friedman did not have the combination to the lock, Basinski never gave him permission to look inside the briefcase, and Basinski told Friedman to burn the briefcase.  226 F.3d at 835-36.

This case is markedly different.  Hannah did not lock any of the Storage Devices.  The Storage Devices were not passcode protected or encrypted.  Hannah also left the Storage Devices in a common area of the residence.  He did not give Stogsdill any instructions regarding the Storage Devices at all.  Hannah assumed the risk that his cohabitant Stogsdill could look at the content of the Storage Devices at any time.  Under these facts, Stogsdill had apparent authority to allow the search because Hannah assumed the risk.  The facts are not at all like those in the Basinski case.  Detective Pippin's inspection of one of the Storage Devices was reasonable and was based on valid consent.

Hannah also challenges Warrant 4 based on the 895-day delay in seeking Warrant 4.  Stogsdill turned over the Storage Devices on May 5, 2016.  Carter submitted the Warrant 4 Application and Affidavit on October 17, 2018, 895 days, or approximately two years and five months later.   A law enforcement officer may temporarily take possession of property without a warrant if the officer has probable cause to believe that that object contains contraband or evidence of a crime.  The officer, however, must obtain a warrant within a reasonable time to search the contents of the object.  When the officer fails to seek a warrant in a reasonable amount of time, the seizure and subsequent search violates the Fourth

Amendment.  United States v. Burgard, 675 F.3d 1029, 1032 (7th Cir. 2012) (internal citations omitted); see United States v. Bradley, 2019 WL 4891699, at *6 (C.D. Ill. July 17, 2019).

To determine the reasonableness of the delay, the Court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Burgard, 675 F.3d at 1033 (quoting United States v. Place, 462 U.S. 696, 703 (1983).  The Court must consider all the facts and circumstances in weighing these interests.  See United States v. Mitchell, 565 F.3d 1347, 1351 (11th Cir. 2009).  The government bears the burden of proof on this issue.  The government must establish by a preponderance of the evidence that the weight of the relevant factors show that the delay was reasonable.  See e.g., United States v. Stewart, 902 F.3d 664, 674 (7th Cir. 2018).

In this case, the delay did not significantly affect Hannah's possessory interest in the Storage Devices.  Burgard, 675 F.3d at 1033.  Hannah's possessory interest was minimal at best because he had been in custody since March 2016.  See United States v. Sullivan, 797 F.3d 623, 633 (7th Cir. 2015); see also Segura v. United States, 468 U.S. 796, 814 (1984) (possessory interest in an apartment was "virtually nonexistent"

while in custody); United States v. Clutter, 674 F.3d 980, 984-85 (8th Cir. 2012) (seizure of computer while defendant was in custody did not meaningfully interfere with the defendant's possessory interest).  Hannah also never requested a return of the Storage Devices.  This factor supports the inference that his possessory interests in the Storage Devices was minimal.  See Burgard, 675 F.3d at 1033.  The adverse impact on Hannah's possessory interest was further diminished because his cohabitant Stogsdill voluntarily turned the Storage Devices over to Detective Pippin.  See United States v. Christie, 717 F.3d 1156, 1163-64 (10th Cir. 2013) (five-month delay was reasonable when defendant's husband consented to the seizure of the computer, the defendant did not seek the return of the computer, and the agent was called away to help with another case); United States v. Stabile, 633 F.3d 219, 235-36 (3d Cir. 2011) (Three-month delay in seeking warrant was reasonable when Defendant's cohabitant consented to search of home and seizure of hard drives, the Defendant did not seek return of the property, and the lead agent had to attend to other law enforcement priorities.).

Beyond Hannah's possessory interests, the Court must also weigh the impact of the delay in seeking the warrant on the criminal justice system.  "[U]nnecessary delays also undermine the criminal justice process

in a more general way:  they prevent the judiciary from promptly evaluating and correcting improper seizures.  Thus the 'brevity' of the seizure is 'an important factor' for us to weigh."  <u>Burgard</u>, 675 F.3d at 1033.  In this case, the 895-day delay is significant.  The Court must consider this factor when weighing the opposing interests of the government.

The opposing governmental interests include the strength of the basis for possession of the property.  The government has a stronger interest in detaining property based on probable cause rather than reasonable articulable suspicion.  "All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures."  <u>Burgard</u>, 675 F.3d at 1033.  The Court must also weigh whether the government "acted with diligence," when pursuing the investigation and securing the warrant. <u>Burgard</u>, 675 F.3d at 1033; <u>see</u> <u>Bradley</u>, at *8.  Here, law enforcement officials had probable cause to believe that the Storage Devices had evidence of Hannah's possession of child pornography.  Law enforcement officials knew that Hannah had child pornography on the SD Card and the Compaq Computer.  They knew he was a registered sex predator and had been previously convicted of possession of child pornography.  Law enforcement officials had a strong interest in retaining the Storage Devices because of the likelihood that they contained additional child pornography.

The Government, however, took over two years, 895 days, to ask for a warrant to search the Storage Devices.  The Government needed to provide a good reason for the delay of over two years.  After careful consideration of the evidence, the Court concludes that the Government has failed to present evidence that an 895-day delay was reasonable. Preparing a warrant application took one to five hours.  The United States Attorney's Office would then arrange to present the application to a Magistrate.  Manganaro and Carter were clearly busy men.  They knew, however, that they needed to secure a search warrant for the Storage Devices within a reasonable time.  Somewhere in those two years and five months from May 2016 to October 2018, Manganaro or Carter could have found one to five hours to prepare the Warrant 4 application and work with an Assistant United States Attorney to present it to a Magistrate.  The Court finds that the Government did not act with diligence in pursuing Warrant 4. In weighing the relevant considerations, the Court concludes that the unreasonable delay violated Hannah's Fourth Amendment right to be free from an unreasonable search and seizure.

The Government argues that even if the delay in seeking Warrant 4 was unreasonable, the evidence should not be suppressed because the officers acted in good faith.  Generally, the evidence found during a search

conducted pursuant to a defective warrant will not be excluded if the officers acted in good faith.  See Herring v. United States, 555 U.S. 135, 144 (2009).  The good faith exception to the exclusionary rule in this context will not apply only "if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." United States v. Smith, 967 F.3d 198, 211 (2ᵈ Cir. 2020) (citing Davis v. United States, 564 U.S. 229, 236-40 (2011)).  In this case, the Court concludes that delay was the result of recurring negligence.  Giving Manganaro and Carter all the benefit of the doubt for their busy schedules, the Court concludes that a reasonable law enforcement officer in their position and under the circumstances of this case would have found the one to five hours needed to prepare the Warrant 4 application no later than November 20, 2016, six months after the FBI took possession of the Storage Devices.[4]  The Court further finds that a reasonable law enforcement officer who had failed to prepare the Warrant 4 application by November 20, 2016, would have found the one to five hours to prepare the Warrant 4 application no later than May 20, 2017, six months later.  If a reasonable officer had so failed

---

[4] The Court is not saying that officers may wait six months to seek warrants.  The Court is using six-month intervals to give the officers in this case all the benefit of the doubt, and so demonstrate that, even with such a benefit of the doubt, their delay repeatedly failed to meet a duty of care for reasonable officers under the circumstances.

twice, he would have found the time by November 20, 2017, or surely by May 20, 2018.  The Court finds that these FBI agents had ample opportunities to complete the Warrant 4 application over the course of two years and five months and failed to do so.  The repeated failure to use available opportunities to prepare the Warrant 4 application constitutes recurring negligence under the facts of this case.  Under these facts, the good faith exception should not apply.  The Court recommends that the evidence found in the execution of Warrant 4 should be suppressed.  The Motion to Suppress should otherwise be denied.

<u>MOTION TO DISMISS INDICTMENT</u>

Hannah asks the Court to dismiss the Indictment because Stogsdill performed a factory reset on her Stogsdill Phone thereby deleting all the data on the Stogsdill Phone.  The Court sees no basis for this Motion.  Law enforcement officials must preserve exculpatory evidence.  To prevail on the Motion to Dismiss Indictment, Hannah must show that law enforcement officials failed to preserve exculpatory evidence and that the officers acted in bad faith.  <u>Arizona v. Youngblood</u>, 488 U.S. 51, 109 (1988).  Werts, however, never had the evidence from the Stogsdill Phone.  Stogsdill had the evidence.  Werts told Stogsdill to bring the Stogsdill Phone to him and not to delete any of the data on the Stogsdill Phone.  Such a request to turn

over the evidence demonstrates that Werts acted in good faith based on current Seventh Circuit case law.  See United States v. Holly, 940 F.3d 995, 1002 (7th Cir. 2019).  Stogsdill disregarded Werts' instructions.  She performed a factory reset and deleted the data before Werts got possession of the Stogsdill Phone.  Werts, therefore, acted in good faith and did not destroy the claimed exculpatory evidence.

Hannah argues that Werts acted in bad faith because he had a duty to protect the evidence on the Stogsdill Phone before he had possession of the evidence.  Hannah relies on the Holly case to support his argument.  In Holly, Chicago Police Officers arrested the defendant Holly in the courtyard of a housing complex operated by the Chicago Housing Authority.  One of the Officers called an analyst at the Chicago Housing Authority to request of copy of the housing complex security camera video recording of the events leading up to the arrest.  The analyst did not answer the call.  The police officer left a voicemail message requesting a copy of the video.  At the time of the call, the analyst was on vacation, and before he returned and heard the message, the recording was deleted.  Holly, 940 F.3d at 999.  The Seventh Circuit determined that the officer acted in good faith by leaving a voicemail requesting a copy of the video.  940 F.3d at 1002.

Like the officer in <u>Holly</u>, Werts asked the third party in possession of the evidence, Stogsdill, to deliver the evidence to him.  He also told her not to delete any information from the Stogsdill Phone.  Werts did more than the officer in <u>Holly</u> because he spoke directly to the person in possession of the evidence and told her not to delete any data.  Werts did not just leave a voicemail.  Under <u>Holly</u>, Werts acted properly and in good faith.  Hannah argues that Werts should have done more to protect the data on the Stogsdill Phone.  The defendant in <u>Holly</u> made a similar argument.  The Seventh Circuit said that such arguments at best may show negligence.  Such negligence is not sufficient to show bad faith.  <u>Holly</u>, 940 F.3d at 1002.  The Motion to Dismiss Indictment should be denied.

## MOTION TO DISMISS COUNTS

Hannah moves to dismiss all five counts in the Indictment as multiplicitous.  All five counts of the Indictment allege that on March 9, 2016 in DeWitt County, Illinois, Hannah possessed child pornography on an electronic storage device.  <u>Indictment</u>, Counts 1-5.  Hannah argues that the five Counts all allege that Hannah possessed child pornography on the same day in the same location.  He argues that alleging five separate charges for the same crime is multiplicitous and subjects him to double jeopardy in violation of his Fifth Amendment rights.

An indictment is multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment when it charges a single offense as separate counts. United States v. Starks, 472 F.3d 466, 468–69 (7th Cir. 2006). To determine whether counts in an indictment are multiplicitous, this Court must look to the applicable criminal statute to determine the allowable "unit" of prosecution as the minimum amount of activity for which criminal liability attaches. United States v. Ajayi, 808 F.3d 1113, 1123 (7th Cir. 2015); United States v. Allender, 62 F.3d 909, 912 (7th Cir.1995).

Determining the unit of prosecution is "a matter of statutory interpretation." United States v. Rentz, 777 F.3d 1105, 1109, n. 4 (10th Cir. 2015) (en banc). If, after employing the usual tools of statutory interpretation, the Court finds that the statutory language is ambiguous, the court must employ the rule of lenity to interpret the statute in favor of the accused, "[If] Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." Bell v. United States, 349 U.S. 81, 84 (1955).

All five Counts of the Indictment alleged violations of 18 U.S.C. § 2252A(a)(5)(B), which provides:

**(a)** Any person who—

. . . .

> **(B)** knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

. . . .

shall be punished as provided in subsection (b).

18 U.S.C. §2252A(a)(5)(B).  Hannah argues that the term "any" is ambiguous in § 2252A(A)(5)(B).  The word "any" could indicate that: (1) the person commits the crime by possessing any number of the listed items that contains child pornography at the same time in the same place, or (2) the person commits the crime by possessing any single listed item that contains child pornography.  Under the first interpretation, Hannah's simultaneous possession of numerous digital storage devices containing child pornography on March 9, 2016 in DeWitt County, Illinois, constitutes a single crime.  Under the second interpretation, Hannah committed a separate, distinct crime by possessing each separate device that contained child pornography.  Hannah argues that § 2252A(a)(5)(B) is, thereby,

ambiguous and must be read in favor of accused under the rule of lenity as a single crime.

The Supreme Court and the Seventh Circuit have found the word "any" to create such an ambiguity in criminal statutes.  In <u>United States v. Bell</u>, 349 U.S. 81 (1955), the Defendant was charged with two counts of violations of the Mann Act for transporting two women across state lines at the same time in the same car. 349 U.S. at 82. The Mann Act provided, in relevant part:

> Whoever knowingly transports in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose.
> . . . .
> Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2421.  The Supreme Court found that the word "any" in the Mann Act was ambiguous and could mean that any act of transportation was a single crime, no matter how many women or girls the defendant transported across state lines at the same time, or the transportation of any woman or girl was a separate crime, thereby making the transportation of each of the two minors a separate crime.  349 U.S. at 83-84.  The Supreme Court held that the ambiguity required applying the rule of lenity and finding that the single act of transporting minors was a single crime no matter the number of minors transported. <u>Id.</u>

The Seventh Circuit followed the Bell decision in interpreting the term "any" in statutes governing unlawful possession of a firearm by a felon and unlawful receipt of a firearm 18 U.S.C. §§ 922(g)(1) and 922(j). United States v. Buchmeier, 255 F.3d 415, 421-23 (7th Cir. 2001).  Section 922(g)(1) provided:

> (g) It shall be unlawful for any person—
>
>> (1) who has been convicted in any court of a crime punishable by a term exceeding one year;
>
> . . . .
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).  Section 922(j) provided:

> (j) It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

18 U.S.C. § 922(j).

The Buchmeier Court followed Bell and determined that the word "any" in "any firearm or ammunition" in §922(g)(1) and "any stolen firearm or stolen ammunition" in §922(j) was ambiguous.  The Court held that possession of any number of firearms or ammunition at the same time and

place was a single crime under §922(g)(1) and possession of any number of stolen firearms or stolen ammunition at the same time and place was a single crime, no matter how many firearms or how much ammunition. Buchmeier, 255 F.3d at 422.

The Court is convinced that these cases apply here.  All these statutes use the word "any" in the same context.  The Supreme Court and the Seventh Circuit both concluded that in this context, the word "any" was ambiguous and that simultaneous acts (either simultaneous possession of multiple firearms or simultaneous transportation of multiple minors) could constitute a single crime or multiple crimes.  Based on this interpretation in Bell and Buchmeier, the Court is convinced that § 2252A(a)(5)(B) must be interpreted under the rule of lenity and Hannah's alleged simultaneous possession on March 9, 2016 of multiple electronic storage media that contain child pornography must be considered a single crime.  Counts One through Five of the Indictment are multiplicitous in violation of the Double Jeopardy Clause.

The Government relies on United States v. Planck, 493 F.3d 501 (5th Cir. 2007) and United States v. Hinkeldey, 626 F.3d 1010, 1014 (8th Cir. 2010) to argue that § 2252A(a)(5)(B) is not ambiguous.  The appeal in Hinkeldey was subject to the plain error rule because the defendant raised

the issue of multiplicity for the first time on appeal.  Hinkeldey, 626 F.3d at 1012.  The case held that the defendant could not establish the plain error because the interpretation of § 2252a(a)(5)(B) was not clear under current law at the time.  Id. at 1013.  Hannah has raised the issue pretrial, so the plain error rule does not apply.

The Planck case is factually similar to this case.  Law enforcement officers executed a warrant to search Planck's residence and found child pornography on a desktop computer, laptop computer, and 223 computer diskettes.  The officer also found four still photographs of child pornography.  Planck was charged with three counts of possession of child pornography in violation of § 2252A(a)(5)(B), one for the laptop, one for the desktop, and one for the diskettes.  Planck, 493 F.3d at 502.  The defendant Planck raised the multiplicity issue by pretrial motion.  Id. at 502-03.  The Fifth Circuit acknowledged the Fifth Circuit cases that agreed with Buchmeier that the illegal possession of any number of firearms at the same time and place under §922 was a single crime.  Id. at 504.  The Planck Court concluded Planck's laptop, desktop, and diskettes were different places where he possessed child pornography, "Planck possessed child pornography in three separate places—a laptop and desktop

computer and diskettes—and, therefore, committed three separate crimes.
The counts are not multiplicitous."  Planck, 493 F.3d at 505.

The Court respectfully declines to follow the Planck Court.  The
phrase "any book, magazine, periodical, film, videotape, computer disk, or
any other material that contains an image of child pornography" in
§2252A(a)(5)(B) is the same use of the word "any" as in the phrases "any
firearm or ammunition" in § 922(g)(1), "any stolen firearm or stolen
ammunition" in §922(j), and "any woman or girl" in the Mann Act, §2421.
The Supreme Court and the Seventh Circuit both found that the use of the
word "any" was ambiguous and had to be read under the rule of lenity to
mean any number of firearms or ammunition, or any number of women or
girls.  The Court must follow these controlling precedents.  Under these
precedents, the use of the word "any" in § 2252A(a)(5)(B) must mean any
number of books, magazines, periodicals, films, videotapes, computer
disks, or any other material that contains an image of child pornography.
The Court must conclude that the five Counts in the Indictment allege that
Hannah possessed the SD Card, the Compaq Computer, and three of the
Storage Devices that contained child pornography on March 9, 2016 in
DeWitt County, Illinois.  Hannah, in a sworn statement, states he
possessed the computers, cell phones, electronic storage devices, and

media that are the subject of the motion to suppress at the DeWitt County residence where he resided on March 9, 2016 (d/e 19 at p. 36).  The Counts allege that Hannah possessed all these devices that contained child pornography at the same time in the same place in DeWitt County, Illinois.  Under §2252A(a)(5)(B), the possession of these devices in one place, the residence, at one time, March 9, 2016, is one crime.  That crime cannot constitutionally be charged in five separate counts.  The multiplicitous counts violated the Double Jeopardy Clause of the Fifth Amendment.

Hannah's Motion to Dismiss Counts asks the Court to dismiss all Counts in the Indictment.  Motion to Dismiss Counts, at 11.  Hannah concedes in his Reply that dismissal of all five counts is not appropriate.  See Defendant's Reply in Support of Motion to Dismiss Counts 1-5 as Multiplicitous (#23) (d/e 32), at 6.  The Court should allow Count One to stand and dismiss the remaining four Counts.  See e.g., United States v. Ajayi, 808 F.3d 1113, 1124 (7th Cir. 2015) (vacating convictions on four of five multiplicitous counts and allowing one conviction to stand).

THEREFORE, THIS COURT RECOMMENDS that Defendant Timothy R. Hannah's Amended Motion to Suppress Evidence (d/e 25) should ALLOWED in part and DENIED in part; his Motion to Dismiss

Indictment for Failure to Preserve Exculpatory Evidence or in the

Alternative to Preclude the Use of Tracy Stogdill's Statements and for an

Adverse Inference Instruction (d/e 21) should be DENIED, and his Motion

to Dismiss Counts 1-5 as Multiplicitous (d/e 23) should be ALLOWED in

part.  The Court recommends that the evidence found in the seven Storage

Devices should be suppressed.  The remainder of the Motion to Suppress

should be denied.  The Court further recommends that Counts Two, Three,

Four, and Five of the Indictment should be dismissed as being

multiplicitous in violation of the Double Jeopardy Clause of the Fifth

Amendment of the Constitution.

The parties are advised that any objection to this Report and

Recommendation must be filed in writing with the Clerk of the Court within

fourteen days after service of a copy of this Report and Recommendation.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely

objection will constitute a waiver of objections on appeal.  See Video

Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local

Rule 72.2.

ENTER:   January 8, 2021

_____s/ Tom Schanzle-Haskins_____
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE
Page **51** of **51**