E-FILED
Tuesday, 27 July, 2021  05:58:27 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-cr-30071** |
| | ) | |
| **TIMOTHY R. HANNAH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Magistrate Judge Tom Schanzle-Haskin's Report and Recommendation (d/e 52), which recommends denying Defendant Timothy R. Hannah's pending Motion to Dismiss Indictment for Failure to Preserve Exculpatory Evidence or in the Alternative to Preclude the Use of Tracy Stogsdill's Statements and For an Adverse Inference Instruction (Motion to Dismiss) (d/e 21) and recommends allowing in part and denying in part Defendant's pending Motion to Suppress Evidence (d/e 25).  Defendant has filed Objections to the Report and Recommendation (d/e 54), as has the Government (d/e 56).  For the reasons below, the Court ADOPTS IN PART and REJCTS IN PART the recommendations in Magistrate

Judge Schanzle-Haskins' Report and Recommendation (d/e 52).

Defendant's Motion to Dismiss (d/e 21) is DENIED.  Defendant's

request for a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154

(1978), is GRANTED.

## I. FACTUAL BACKGROUND

The relevant facts were fully set out in the "Statement of

Facts" section of the Report and Recommendation, to which there

has been only one objection, as noted below.  For ease of review, the

facts from the Report and Recommendation are recounted below

with limited editing and additions.

On December 4, 2018, a grand jury indicted Mr. Hannah with

five counts of possession of child pornography in violation of 18

U.S.C. § 2252A(a)(5)(B) and one count seeking forfeiture of certain

property pursuant to 18 U.S.C. § 2253.  Indictment (d/e 1).  A

superseding indictment has since been filed, charging Mr. Hannah

with only one count of possession of child pornography in violation

of 18 U.S.C. § 2252A(a)(5)(B) and one count seeking forfeiture of

certain property pursuant to 18 U.S.C. § 2253.

The majority of the evidence against Mr. Hannah was found on electronic devices owned by Mr. Hannah.  Law enforcement officials acquired the electronic devices in March, April, and May 2016.  The first warrant sought evidence of drug trafficking and possession of child pornography.  The child pornography search was based solely on allegations made by Tracy Stogsdill.  The other three warrants only sought evidence of possession of child pornography and relied, in large part, on the evidence found in the first search warrant.  Mr. Hannah argues that the evidence from each of these warrants should be suppressed because there was not sufficient probable cause and because they were not executed in good faith.

### A. The 2015 Investigation of Mr. Hannah

While the investigation leading to Mr. Hannah's indictment here did not begin until March 2016, Stogsdill had made previous allegations against Mr. Hannah.  On June 9, 2015, approximately nine months before the first warrant application, Dewitt County, Illinois, Sheriff's Office Detective and Illinois State Police Task Force 6 (Task Force) Officer Luke Werts received a NEXTbook tablet computer (NEXTbook) from Clinton, Illinois Police Detective Ummel.  Detective Ummel reported that on June 2, 2015 an individual

named Tracy Stogsdill turned over the NEXTbook to the Clinton Police Department because she believed the NEXTbook contained child pornography downloaded by Mr. Hannah.  Stogsdill stated that Mr. Hannah used the NEXTbook frequently while he lived with her at her residence.  Detective Ummel turned the NEXTbook over to Werts because the residence was in Dewitt County outside the city limits of Clinton, Illinois.  Werts secured a search warrant to search the NEXTbook for child pornography.  On June 12, 2015, Werts took the NEXTbook to Decatur, Illinois Police Detective David Dailey.  Detective Dailey determined that the NEXTbook had an app called Gallery Vault on it.  Detective Dailey stated that Gallery Vault was an app used to conceal data.  See Defendant's Reply (d/e 33) (Reply), Exhibit A, DeWitt County Sheriff's Office Incident/Offense Report 1-15-001142.  Detective Dailey told Officer Werts this information.  See Affidavit of C. Luke Werts at ¶5 (d/e 37-1).

Detective Dailey performed a file system backup utilizing a program called cellbrite and created a compact disc.  Id.  On June 17, 2015, Werts sent the NEXTbook and the compact disc to the Illinois State Police Computer Evidence Recovery Unit (CERU) in an

attempt to execute a full search, including the concealed data.  <u>See</u> Affidavit of C. Luke Werts at ¶6 (d/e 37-1).

On March 23, 2016, DeWitt County Sheriff's Office Detective Pippin received the NEXTbook and compact disc back from CERU and put them in the DeWitt County evidence vault.  Werts reviewed a report from Jeff Knauer of CENU about the contents of the NEXTbook.  Knauer determined that the NEXTbook contained pornography, but not child pornography.  <u>See</u> Reply, Exhibit A, DeWitt County Sheriff's Office Incident/Offense Report 1-15-001142, Supplemental Report dated May 2, 2016.

Mr. Hannah argues that Werts likely saw the CENU/Knauer report prior to March 23, 2016.  <u>See</u> Defendant's Sur- Sur-Reply (d/e 34), at p. 2-5.  However, Werts did not complete the narrative report and states that he did not review Knauer's report until May 2, 2016.  <u>See</u> Affidavit of C. Luke Werts at ¶8 (d/e 37-1).  Werts states that he does not recall why there was a delay between the receipt of the Knauer/CENU report and his review of the report, but believes he may have been unaware that the evidence and report had been retrieved from CENU.  <u>Id.</u> at ¶9.  Werts further states that the Knauer/CERU report states that the NEXTbook and compact

disc were analyzed between January 27, 2016 and March 21, 2016. Id.  Accordingly, the Court finds that Werts could not have seen the report prior to applying for the first warrant at issue in this case.

### B. Warrant One: March 17, 2016

On March 9, 2016, Mr. Hannah was arrested on state charges related to the manufacture of methamphetamine.  At that time, the officers took possession of Mr. Hannah's ZTE model Z667G Serial #9B0428813371 cellular phone (Hannah Phone) and a removable storage device (SD Card) attached to the Hannah Phone.  On March 17, 2016, Werts submitted a complaint and affidavit in support of a request for a search warrant to search the Hannah Phone and the SD Card (Warrant One).  See Motion to Suppress, Exhibit 1, Warrant One and Warrant One Complaint.  Werts asked for a warrant to search for:

C. Items or Material to be seized:
- Any and all evidence of the distribution and manufacturing of illegal drugs, including but not limited to e-mails, texts, word documents, private messages, and call logs
- Any and all evidence of the acquisition and/or distribution of child pornography including but not limited to videos, pictures, internet history, and previously deleted files

Warrant One Complaint, at 000019.[1]

Werts stated in the Warrant One Complaint that on March 8, 2016, an Illinois Conservation Police Officer contacted Werts about a fire at Weldon Springs State Park in DeWitt County (Park). Maintenance workers saw the fire and a white man and woman with a black and white dog leave the area of the fire in a dark red Chevrolet four door sedan. Werts stated that he remembered from "prior law enforcement investigations" that Stogsdill drove a maroon Chevrolet Cobalt sedan. Werts and Task Force Inspector Sean Freytag spoke to Stogsdill. Stogsdill told Werts and Freytag that Mr. Hannah wanted her to drive him out to the country to burn items earlier that day. Id.

Werts stated that Stogsdill voluntarily came to the DeWitt County Sheriff's Office to be interviewed. Stogsdill waived her Miranda rights before the interview began. Stogsdill said that she took Mr. Hannah to the Park that day and took her dog along. Stogsdill said that Mr. Hannah initially did not tell her what he wanted to burn except that he could not just place it in a dumpster.

---

[1] Like the Magistrate Judge, the Court cites to the Bates Stamp pagination on the Exhibits filed with the Motions. The Court uses the original document page number of Exhibits admitted at the Hearing.

Stogsdill said she smelled ammonia once the item started to burn. At that point she said that Mr. Hannah told her it was a "lab." She confirmed that the term "lab" meant a "shake and bake cook" bottle used to manufacture methamphetamine. Werts stated that Stogsdill told Werts and Freytag that Mr. Hannah did not cook in front of her, but he kept his methamphetamine bottle with him. She described how Mr. Hannah acquired products including lye, salt, Coleman fuel, and ice packs, to amass the necessary ingredients to make methamphetamine. She said that Mr. Hannah sold the methamphetamine for $100 a gram. See Warrant One Complaint, at 000019-20.

> Werts stated further in the Warrant One Complaint:
>
> After describing the meth cook operation, Stogsdill informed Werts she had found pictures of young naked girls on her phone. She said Hannah obtains images on her phone and then sends them to his phone. According to Stogsdill Hannah uses the wireless connection at the Casey's parking lot to accomplish this.
>
> On March 9, 2016 Timothy Hannah was interviewed. He admitted being in the area of the park where the fire took place, but denied burning anything. He confirmed the information given by the maintenance workers, admitting to arriving with Stogsdill and the dog in the maroon Chevrolet Cobalt. Hannah denied having any knowledge of producing methamphetamine and requested an attorney. Stogsdill gave consent to search her phone on

the 14th of March, but all data had been erased. Illinois
State Police technicians are currently attempting to
retrieve previously deleted data on the phone.

Warrant One Complaint, at 000020.

On March 17, 2016, a DeWitt County Associate Circuit Judge
issued Warrant One.  Warrant One authorized the search of the
Hannah Phone and the SD Card and the seizure of the items
requested in the Warrant One Complaint and quoted above.
Warrant One.

The Parties agree that Werts omitted from the Warrant One
Complaint the following information regarding Stogsdill's consent to
the search of her phone (Stogsdill Phone) and the deletion of the
data on the Stogsdill Phone: On March 14, 2016, Stogsdill met with
Werts at the Sheriff's Office.  During this encounter, Werts asked
Stogsdill for consent to search the Stogsdill Phone for potential
child pornography.  Stogsdill agreed to the search but stated that
the Stogsdill Phone was at home.  Werts told Stogsdill not to erase
anything from the Stogsdill Phone.  Stogsdill stated that some
things had already been erased.  Werts told Stogsdill that there was
a possibility of recovering erased items.  Stogsdill went home,

retrieved the Stogsdill Phone, and brought the Stogsdill Phone back to Werts at the Sheriff's Office.  Werts turned on the Stogsdill Phone later that day.  The Stogsdill Phone was in startup mode with one percent power.  Motion to Suppress at 5; Government's Combined Response (d/e 30) (Response) at 7.  On March 15, 2016, Stogsdill met with Werts and Freytag at the Circle K gas station in Clinton, Illinois.  Werts asked Stogsdill if she conducted a factory reset on the Stogsdill Phone, thereby erasing everything from the phone.  Stogsdill confirmed that she conducted a factory reset because Werts told her that anything erased from the Stogsdill Phone could be recovered.  Stogsdill said she did not want to go to jail.  Werts told Stogsdill that she may have erased potential evidence from the Stogsdill Phone by resetting it.  Motion to Suppress at 6, Response at 7.

Werts also omitted from the Warrant One Complaint the fact that Stogsdill had previously been convicted of two felonies and two misdemeanors involving crimes of dishonesty.  Response at 8.  Werts also did not mention the prior 2015 incident in which Stogsdill brought him the NEXTbook.  As stated above, the records

indicate that Werts could not have reviewed the report from CENU/Knauer regarding this device until on or after March 23, 2016.

While executing the search pursuant to Warrant One, officers found images that form, in part, the basis for the child pornography possession charge in the Superseding Indictment.

### C. Warrant Two Issued April 7, 2016

On April 7, 2016, Werts applied for a second search warrant (Warrant Two).  Motion to Suppress, Exhibit 2, Warrant Two and Warrant Two Complaint.  Werts asked for a warrant to search a Compaq Presario M2000 computer with serial number CN5311683 (Compaq Computer) obtained from Stogsdill as described below. Werts asked to search for the following:

Items or Materials to be seized:
Articles and things which have been used in the commission of, or which constitute evidence of, the offense of Child Pornography, 720 ILCS 5/11-20.1, including but not limited to:

- **Proof of access, control and/or ownership of the aforementioned Compaq Presario M2000 computer, such as hardware and software licenses and other indicia of Timothy Hannah's activity on the computer;**
- **Computer hardware;**

- **Computer software documentation, passwords, data security devices;**
- **Data documenting internet sites visited;**
- **E-mails sent and received and data documenting e-mails sent and received;**
- **Cellular phone sync files, data or documents stored or contained within the computer;**
- **Photography, digital images and video recordings of a child pornography nature stored or contained within the computer.**

Warrant Two Complaint, at 000061 (emphasis in the original).

Werts stated in the Warrant Two Complaint that Mr. Hannah was arrested on March 9, 2016 and charged with Methamphetamine Manufacturing Waste, an Illinois Class 2 felony. Werts stated the Hannah Phone was taken from Mr. Hannah incident to his arrest. Mr. Hannah admitted that he owned the Hannah Phone. Werts stated that Warrant One was secured to search the "contents of said phone." Werts stated:

> The return of the search warrant for the contents of said cell phone showed numerous still photos of naked female children in sexually explicit positions as well as videos of naked female children engaged in sexual acts. Said children appear to be under 18 years of age and many of which appear to under 13 years of age.

Warrant Two Complaint, at 000062. Werts stated that Mr. Hannah lived with Stogsdill prior to his arrest. Werts stated that Stogsdill stated in an interview that "she had previously seen what she

believed to be child porn on Defendant's cell phone." Stogsdill told Werts that there were three additional cell phones at her home. Id.

Werts stated that on April 5, 2016, Werts met with Stogsdill at the Residence to ask about the three additional cell phones. Stogsdill said that she no longer had the phones. Stogsdill, however, gave Werts the Compaq Computer. Stogsdill said that the Compaq Computer was Mr. Hannah's property. She said that she believed the Compaq Computer contained child pornography. Id.

On April 7, 2016, a DeWitt County Associate Circuit Judge issued Warrant Two. Warrant Two authorized the search of the Compaq Computer and seizure of the items requested in the Warrant Two Complaint quoted above. Response, Exhibit 2, Warrant Two. State authorities were unable to complete a search the Compaq computer, however, because it was passcode protected.

### D. Delivery of Storage Devices on May 5, 2016

On May 5, 2016, Stogsdill went to the Sheriff's Office. She met with Detective Pippin. Stogsdill said she was cleaning the Residence and found two pouches hidden in a cabinet on a ledge. She also said that the pouches were in a common area of the Residence. She said that the pouches contained seven electronic storage devices

(Storage Devices): a black SanDisk thumb drive with "PRIVET" written on the back, a black SanDisk Cruzer Glide 32 GB thumb drive, a black Monster Digital OTG 16 GB thumb drive with orange paint on the back, a green and gray PNY Prime Performance 64 GB micro SD card, a red and gray SanDisk Ultra Plus 16 GB micro SD card, a black SanDisk 4 GB micro SD card, and a black 4 GB micro SD card with no brand information.  Stogsdill told Pippin that she had ended her relationship with Mr. Hannah.  Stogsdill said the Storage Devices did not belong to her and she feared that they contained child pornography.  Stogsdill said she was turning the Storage Devices over to law enforcement of her own free will.  She said she had no clue what information was contained in the devices. Detective Pippin reviewed one of the Storage Devices, a thumb drive.  Detective Pippen determined that the footage appeared to be child pornography.  Detective Pippen did not search any further at that time.  He alerted the DeWitt County States Attorney's Office. Detective Pippin later learned that the FBI was investigating Mr. Hannah.  On May 6, 2016, Pippin told FBI Special Agent Anthony Manganaro about the existence of the Storage Devices.  Pippin put the Storage Devices with the existing items of

evidence for Mr. Hannah in the possession of the DeWitt County Sheriff's Office.  Reply, Exhibit B, DeWitt County Sheriff's Office Incident/Offense Report 1-16-001034.

FBI Special Agent Anthony Manganaro took possession of the Storage Devices on May 20, 2016.  <u>See</u> Hearing Exhibit 5, Manganaro Timeline, at 1.  Manganaro was responsible for the FBI's investigation of Hannah.  Manganaro was stationed at the Champaign, Illinois, Resident Agency (Champaign Office) from November 2014 until he was transferred in March 2018.  The Champaign Office covered 13 counties in east central Illinois.  The Champaign Office was under Springfield FBI Field Office.  The number of agents assigned to the Champaign Office varied from two to six agents during Manganaro's tenure there.  Manganaro primarily worked violent crimes against children (sometimes referred to as VCAC).  <u>See</u> Hearing Transcript (d/e 46), at 8-10, 14.

### E. Warrant Three Issued on June 7, 2016

On June 7, 2016, Manganaro applied for a Search Warrant from Magistrate Judge Schanzle-Haskins.  Motion to Suppress, Exhibit 3, Application for Search Warrant (Warrant Three Application) and Search and Seizure Warrant (Warrant Three).

Manganaro sought Warrant Three to search the Hannah Phone and the Compaq Computer.  Manganaro recited how Stogsdill stated that she saw images of young naked girls on her Stogsdill Phone and that Mr. Hannah transferred such images from the Stogsdill Phone to the Hannah Phone.  Manganaro recited that Mr. Hannah admitted owning the Hannah Phone at the time of his arrest. Manganaro recited that a state court judge issued Warrant One to search the Hannah Phone and the SD Card.  Manganaro stated that state officers who attempted to search the Hannah Phone could not because the Hannah Phone was passcode protected.  Manganaro stated that federal investigators had the resources to disable the passcodes and access the data on the Hannah Phone.  Warrant Three Application, at 000074.

Manganaro stated that state law enforcement officials were able to search and seize the data on the SD Card pursuant to Warrant One.  Manganaro stated that the SD Card contained 20 images of child pornography.  Manganaro described in detail the depictions of child pornography in three of these images. Manganaro also stated that the SD Card contained 18 images of

child erotica, naked juvenile and/or prepubescent children in non-sexual poses.  Warrant Three Application, at 000075.

Manganaro recited that Stogsdill turned over the Compaq Computer stating that Mr. Hannah used it.  Manganaro stated that a state court judge issued Warrant Two to search the Compaq Computer.  Manganaro indicated that the Compaq Computer was not searched because it was passcode protected.  Manganaro stated that he believed federal officials could disable the passcode and gain access to the data on the Compaq Computer.  Warrant Three Application, at 000075-76.

Manganaro stated that Mr. Hannah was a registered sexual predator with a prior conviction in Florida in 2011 for possession of child pornography.  Warrant Three Application, at 000076. Manganaro also discussed Mr. Hannah's statements in an interview on April 8, 2016.  The Government has agreed not to use the contents of those conversations in this case.  The Court, therefore, will not consider that information in evaluation of the Warrants.

On June 7, 2016, this Court issued Warrant Three to authorize the search of the Hannah Phone and the Compaq Computer.  See Warrant Three.

### F. Events Between Warrant Three and Warrant Four

Manganaro did not seek authority in Warrant Three to search the Storage Devices.  However, the Storage Devices remained in the possession of the FBI until the fourth warrant (Warrant Four) was issued on October 17, 2018.  Throughout the approximately two years and five months from May 5, 2016 to October 17, 2018 (895 days), Mr. Hannah remained in either state or federal custody.  Mr. Hannah did not ask, either directly or through a representative, for the return of the Storage Devices throughout this period.  The Court has not been presented with any evidence that Mr. Hannah knew law enforcement officials had possession of the Storage Devices before Warrant Four was issued.

Manganaro did not include the Storage Devices in the Warrant Three application because he and the Assistant United States Attorney decided that Manganaro should speak to Stogsdill again before seeking a search warrant for the Storage Devices.  Hearing Transcript, at 27.

The Government objects to the Report and Recommendation's finding that "Manganaro, however, never attempted to contact Stogsdill before he was transferred in March 2018."  Report and

Recommendation (d/e 52) at 15-16.  The Court agrees that the more accurate characterization of events is that Manganaro was unable to speak with Stogsdill despite various attempts.

At the hearing, Manganaro testified that he attempted to reach out to Stogsdill and in his "communications with the DeWitt County Sheriff's Office, he had kind of heard rumors that she was potentially out of state, so looking at that.  There were several phone calls made that were unanswered."  Hearing Tr. at 42. Manganaro also detailed how Stogsdill was arrested while Manganaro was in Nepal and that he had planned on speaking with her when he came back, but that she was released prior to his return.  Hearing Tr. at 49.  He also explained, "I -- myself and another agent, we went and looked at some potential residences that she may have been at. We never found her."  Hearing Tr. at 50. Manganaro also testified that he worked with Werts to attempt to gain contact with Stogsdill.  Hearing Tr. at 99.

In March 2018, Manganaro was transferred to FBI headquarters for reassignment.  FBI Special Agent Michael Carter thereafter took over responsibility for the case against Mr. Hannah. On October 17, 2018, Carter prepared the application for Warrant

Four.  Carter never spoke to Stogsdill before preparing the Application for Warrant Four.  Carter never intended to speak to her before preparing the application.  Hearing Tr. at 148.

The evidence adduced at the Hearing showed that Manganaro and Carter were often busy with other cases from May 2016 to October 2018.  The Government admitted into evidence at the Hearing timelines prepared by Manganaro and Carter.  Hearing Exhibits 5 and 6 (Timelines).  The Timelines showed that Manganaro and Carter were each investigating several other cases from May 2016 to October 2018.  Manganaro investigated several VCAC cases in which law enforcement believed the suspect was actively abusing children.  Manganaro gave those cases high priority because of the need to stop ongoing abuse.  In contrast, Mr. Hannah did not pose an immediate threat to any child because he was in state custody.  Manganaro at one point traveled to Nepal to investigate a United States citizen who was sexually abusing minors in Nepal.  Manganaro also participated in the investigation and trial of a defendant who had abducted and murdered a foreign national from China named Yingying Zhang.  Zhang had been a visiting scholar at the University of Illinois at the time of her abduction.

The investigation and trial preparation took up significant amounts of Manganaro's time. In addition, Manganaro was assigned to train new FBI agents assigned to the Champaign Office during the relevant period. See generally, Hearing Tr. at 14-86, 121-41. When Carter took over the Hannah case, he was already heavily involved in an ongoing investigation of a violent crime and drug investigation that involved gang activity, drugs, and possible connection to a double homicide. Carter spent eighty percent of his time on this matter. That investigation was completed in mid- September 2018. See Hearing Tr. at 122-25.

The Timelines show that Manganaro and Carter spent significant time in training. Manganaro was also required to act as temporary office supervisor from time to time. The Timelines also did not account for Manganaro and Carter's time on many business days when each was responsible for the Hannah investigation from May 2016 to October 2018. Counsel for Defendant asserted at the hearing that the Timelines did not account for Manganaro's activities for 288 working days when he was responsible for the Hannah investigation and did not account for Carter's activities for 136 working days when he was responsible for the Hannah

investigation.  See Hearing Tr. at 91-92, 149.  The Government has not objected to this calculation and it is clear that the Timelines do not account for Manganaro and Carter's activities on many working days between May 2016 October 2018.

According to Manganaro and Carter's testimony at the Hearing, preparing a warrant application generally took one to five hours.  See Hearing Tr. at 96, 143.  An Assistant United States Attorney generally arranged to present a warrant to a federal judge.  Hearing Tr. at 97-98.  Manganaro also agreed that he had never heard of even a 500-day lapse of time from the date that a device was seized and the date that a warrant application was filed.  Hearing Tr. at 109.

### G. Warrant Four Issued October 17, 2018

On October 17, 2018, Carter submitted an Application for Search Warrant, Affidavit in Support of Search Warrant (Warrant Four Affidavit) and a proposed Search and Seizure Warrant to Magistrate Judge Schanzle-Haskins.  Carter submitted the Affidavit to secure a warrant to search the Storage Devices.  Carter recited substantially the same information regarding the basis for the Affidavit that Manganaro recited in the Warrant Three Application.

See Motion to Suppress, Exhibit 4, Warrant Four Affidavit, at
000172-73.  Carter added that the search pursuant to Warrant
Three turned up a "voluminous amount of child exploitative
material" on the Compaq Computer. Carter said the material was
sent to the National Center for Missing and Exploited Children for
review.  The review showed that the Compaq Computer contained
child pornography files from 39 previously identified series.  Carter
then described in detail three of the images of child pornography.
Warrant Four Affidavit, at 000174-76.

Carter stated that Stogsdill delivered the Storage Devices to
Detective Pippin at the Sheriff's Office.  Carter indicated Stogsdill
said she found the Storage Devices in a common area of the
Residence and that she was turning them over of her own free will.
Carter stated that Detective Pippen kept the devices at the Sheriff's
Office and contacted Manganaro.  Carter said Detective Pippin
agreed that the Storage Devices should be turned over to the FBI.
Carter noted the Storage Devices remained at the Sheriff's Office
until May 20, 2018, when Manganaro took possession of them.
Carter said that the Storage Devices were in the FBI Springfield
Office evidence control room.  Warrant Four Affidavit, at 000176-78.

Carter also noted that Mr. Hannah was in state custody. Upon review of the showing, Magistrate Judge Schanzle-Haskins issued Warrant Four to search the Storage Devices.  Motion to Suppress, Exhibit 4, Warrant Four at 000165.

## II. PROCEDURAL BACKGROUND

On December 4, 2018, a five-count Indictment was filed against Mr. Hannah charging him with five counts of possession of child pornography on or about March 9, 2016.  Mr. Hannah filed numerous pre-trial motions on October 28, 2019, including the two motions that remain at issue here, Motion to Dismiss (d/e 21) and Motion to Suppress (d/e 25).  The Court referred all the motions to Magistrate Judge Schanzle-Haskins.  The Government filed its Combined Response (d/e 30) on January 10, 2020.  Mr. Hannah filed a reply (d/e 33).  After Magistrate Judge Schanzle-Haskins granted permission, the Government filed a Sur-Reply (d/e 34) and Mr. Hannah filed a Sur-Sur Reply (d/e 36).

Magistrate Judge Schanzle-Haskins determined that an evidentiary hearing was required regarding the reasons for the Government's delay from May 6, 2016 until October 17, 2018 to seek Warrant Four to search seven removable media storage

devices.  After delays due to COVID-19, the hearing was held on October 13, 2020.  A transcript was prepared (d/e 46), and the parties filed supplemental briefs (d/e 50 and 51).

On January 8, 2021, Judge Schanzle-Haskins issued his Report and Recommendation.  The Report and Recommendation recommended that the Court allow Mr. Hannah's Motion to Suppress (d/e 25) in part and deny the motion in part.  Specifically Judge Schanzle-Haskins recommended granting Mr. Hannah's motion regarding suppression of the seven removal storage devices searched pursuant to Warrant Four due to the delay in seeking a search warrant, but Judge Schanzle-Haskins recommended that the motion be denied in all other aspects.  Judge Schanzle-Haskins further recommended that this Court deny Mr. Hannah's Motion to Dismiss (d/e 21).

Judge Schanzle-Haskins also recommended that Mr. Hannah's Motion to Dismiss Counts 1-5 as Multiplicitous (d/e 23) be granted in part.  However, in light of the filing of a superseding indictment that now only charges one count, this Court determined that Mr. Hannah's Motion to Dismiss Counts 1-5 as Multiplicitous (d/e 23) was moot.  See April 14, 2021 Text Order.

The parties have both filed Objections to the Report and Recommendation, see Defendant's Objections (d/e 54); Government's Objections (d/e 56), as well as replies, see Defendant's Reply to Government's Objections (d/e 57); Governments Reply to Defendant's Objections (d/e 64).  This Court must review de novo those portions of the Report and Recommendation to which timely objections are made.  28 U.S.C. § 636(b)(1).

## III. MOTION TO DISMISS INDICTMENT OR FOR AN ADVERSE INFERENCE

Mr. Hannah asks the Court to dismiss the Indictment because Stogsdill performed a factory reset on her phone, which deleted all the data on her phone.  When confronted with an allegation that the Government failed to preserve potentially exculpatory evidence, the Court must apply the standard set forth in Arizona v. Youngblood, 488 U.S. 51, 109 (1988).  Under Youngblood, the Court should find a due process denial only if "a criminal defendant can show bad faith on the part of the police."  Id. at 58.  The Seventh Circuit precedent requires the defendant to demonstrate: "(1) bad faith by the government, (2) the exculpatory nature of the evidence was

apparent before its destruction, and (3) that he could not obtain the same evidence anywhere else." United States v. Fletcher, 634 F.3d 395, 407 (7th Cir. 2011), as amended (Feb. 23, 2011) (citations omitted).

The Court agrees with Judge Schanzle-Haskins that Mr. Hannah cannot show bad faith.  Bad faith requires "proof of an official animus or a conscious effort to suppress exculpatory evidence, and necessarily turns on an official's subjective knowledge that the evidence in question had exculpatory value at the time it was lost or destroyed." United States v. Cherry, 920 F.3d 1126, 1140 (7th Cir.), cert. denied, 140 S. Ct. 296 (2019) (quoting United States v. Bell, 819 F.3d 310, 318 (7th Cir. 2016) (quoting Jones v. McCaughtry, 965 F.2d 473, 477 (7th Cir. 1992)) (internal quotations omitted).

As Judge Schanzle-Haskins noted, Werts never had the evidence from the Stogsdill Phone.  Stogsdill had the evidence. Werts told Stogsdill to bring the Stogsdill Phone to him and not to delete any of the data on the Stogsdill Phone.  Such a request to turn over the evidence demonstrates that Werts acted in good faith based on current Seventh Circuit case law.  See United States v.

Holly, 940 F.3d 995, 1002 (7th Cir. 2019).  Stogsdill disregarded Werts' instructions.  She performed a factory reset and deleted the data before Werts got possession of the Stogsdill Phone.  It is unclear whether Stogsdill knew all the data would be deleted and be unable to be recovered when she conducted a factory reset.

Mr. Hannah argues that Judge Schanzle-Haskin's conclusion is wrong because Werts already knew that Stogsdill had destroyed some evidence on the phone, but did nothing more than tell her not to do it again.  Further, Werts told her that he still might be able to recover deleted files, which Mr. Hannah argues let Stogsdill know that deleting evidence might not matter.

Mr. Hannah also argues the Holly case supports his postion.  In Holly, Chicago Police Officers arrested the defendant in the courtyard of a housing complex operated by the Chicago Housing Authority.  One of the Officers called an analyst at the Chicago Housing Authority to request of copy of the housing complex security camera video recording of the events leading up to the arrest.  The analyst did not answer the call.  The police officer left a voicemail message requesting a copy of the video.  At the time of the call, the analyst was on vacation, and, before he returned and

heard the message, the recording was deleted.  <u>Holly</u>, 940 F.3d at 999. The Seventh Circuit determined that the officer acted in good faith by leaving a voicemail requesting a copy of the video.  <u>Id.</u> at 1002.

Mr. Hannah argues that Werts was acting in bad faith because, unlike the officers in <u>Holly</u>, no law enforcement had viewed the evidence before it was destroyed and law enforcement in <u>Holly</u> were complying with their protocol.  However, unlike <u>Holly</u> Werts did not just leave a voicemail message, but actually told Stogsdill to preserve the evidence.  Mr. Hannah argues that Werts should have assumed Stogsdill would delete evidence because she had already admitted to deleting some of the data on her phone.  At best, though, this shows that Werts may have been negligent for not securing the Stogsdill Phone earlier or obtaining a warrant for the Stogsdill Phone.  Bad faith is a higher standard.  Mr. Hannah's allegations fall short of showing that Werts made the required "conscious effort to suppress exculpatory evidence."  <u>United States v. Fletcher</u>, 634 F.3d 395, 408 (7th Cir. 2011), <u>as amended</u> (Feb. 23, 2011).

Mr. Hannah alternatively asks the Court to strike Stogsdill's statements and preclude all witness testimony regarding the contents of her cell phone.  He argues that "the Court should strike Stogsdill's statements from the warrant affidavits and preclude any testimony about the unproven, unverified contents of the cell phone that neither law enforcement nor defense counsel ever viewed." Further, Mr. Hannah argues that the Court should draw an adverse inference, including eventually instructing the jury that any evidence that would have been on Stogsdill's phone would have been favorable to Mr. Hannah had it not been deleted.  Judge Schanzle-Haskins Report and Recommendation did not address this portion of the motion.

The Court does not find Mr. Hannah's request to strike Stogsdill's statements from the warrant affidavits appropriate.  Mr. Hannah does not cite any caselaw as a basis for this request.  As ordered below, Mr. Hannah is entitled to an evidentiary hearing regarding the warrants.  Stogsdill's deletion of evidence certainly relates to whether there was probable cause to issue the warrant. However, the Court finds that Werts did not act in bad faith regarding the deletion of evidence on Stogsdill's phone.  Absent bad

faith on the part of law enforcement, striking Stogsdill's statements from the warrant affidavits is not appropriate.

Mr. Hannah also asks for an adverse inference instruction should this case proceed to trial. While the Seventh Circuit has not addressed the issue, many courts have found that an adverse inference instruction is an appropriate remedy for the failure to preserve evidence in a criminal case. Some courts have held that bad faith is required to obtain an adverse inference instruction. See United States v. Braswell, 704 Fed. Appx. 528, 535 (6th Cir. 2017) (adverse inference instruction appropriate in a criminal case only if there is bad faith); United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000) (finding no spoliation instruction necessary where there was no evidence of bad faith conduct by the government when informant installed new program on his computer that resulted in erasing everything on the hard drive); United States v. Romo-Chavez, 681 F.3d 955, 961 (9th Cir. 2012) (requiring the defendant to establish "(1) that the evidence was destroyed in bad faith, and (2) that he was prejudiced by its destruction," prior to giving a spoliation instruction).

However, other courts have applied a balancing test, whereby negligent destruction may be sufficient in certain circumstances. See United States v. Sivilla, 714 F.3d 1168, 1173 (9th Cir. 2013) ("[C]ourts must balance 'the quality of the Government's conduct' against 'the degree of prejudice to the accused,' where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice."); United States v. Laurent, 607 F.3d 895, 902 (1st Cir. 2010) (a spoliation instruction "usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily *negligent* destruction would not support the logical inference that the evidence was favorable to the defendant," but noting that there may be instances where a spoliation instruction might still make sense with negligent destruction); United States v. Garcia, 596 Fed. Appx. 24, 26 (2d Cir. 2015) (noting that bad faith is not necessary to justify an inference of spoliation, and it "may be appropriate in some cases involving the negligent destruction of evidence," but also finding that the defendant must show "that the missing [evidence] [is] 'material in the sense that its suppression undermined confidence in the outcome of the trial.") (citations omitted).  See also, United States v.

<u>Flores-Rivera</u>, 787 F.3d 1, 19 & n.13 (1st Cir. 2015) (stating that
the government's negligent destruction of probative evidence did not
justify a new trial, but that the defendants "likely would have been
entitled to a spoliation instruction" had they requested one).

Here, regardless of whether a showing of bad faith is required,
Mr. Hannah has not shown how the destruction of evidence
prejudiced him with respect to his criminal liability as opposed to
prejudicing him by initiating the investigation in first place, which
is addressed in his motion to suppress. We do not know why
Stogsdill conducted the factory reset on her phone: She may have
been worried that there was evidence on her phone that would
incriminate her. Or she could have momentarily had a change of
heart and not wanted to incriminate Mr. Hannah. Alternatively, Mr.
Hannah argues that she could have been lying about Mr. Hannah's
practice of downloading child pornography on her phone and
sending it to the Hannah Phone and that an inspection of her
phone would have uncovered no child pornography. In any of these
scenarios, however, it is not clear how an adverse inference
instruction would benefit Mr. Hannah at his criminal trial. As
stated above, if Stogsdill was lying about child pornography being

downloaded to her phone, the benefit of this evidence to Mr.
Hannah would have been a possible lack of investigation, which has
been appropriately raised in his motion to suppress.  The child
pornography at issue in the indictment was found on his phone, not
Stogsdill's phone.  Mr. Hannah is free to renew his motion at trial if
he can show that the destruction of evidence prejudices his defense
at trial.  Accordingly, Mr. Hannah's Motion to Dismiss (d/e 21) is
denied, with leave to refile his motion for an adverse inference
instruction at trial.

## IV. MOTION TO SUPPRESS

Mr. Hannah's Motion to Suppress seeks to suppress evidence
found as a result of four separate warrants.  A search performed
pursuant to a warrant is presumptively valid.  <u>Franks v. Delaware</u>,
438 U.S. 154, 171 (1978); <u>Archer v. Chisholm</u>, 870 F.3d 603, 613-
14 (7th Cir. 2017).  Mr. Hannah bears the burden of establishing
that each of the warrants were not supported by probable cause.
"Probable cause exists when 'there is a fair probability that
contraband or evidence of a crime will be found in a particular
place.'"  <u>United States v. Grubb</u>, 547 U.S. 90, 95 (2006) (quoting
<u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)).  A search will be upheld

as long as the issuing judge, "had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing."  United States v. Reichling, 781 F.3d 883, 886 (7th Cir. 2015) (quoting United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010).

Judge Schanzle-Haskins recommends denying Mr. Hannah's requests to suppress the evidence from Warrants One, Two, and Three, but granting the request to suppress the evidence from Warrant Four.  The majority of the evidence against Mr. Hannah rises or falls with whether the search of images in Warrant One was valid.  As Warrant One authorized a separate search for drug evidence and child pornography evidence, the Government argues that the search of images that led to the discovery of child pornography was valid either because Warrant One had sufficient probable cause to search for evidence of child pornography or because Warrant One's authorization to search for drug evidence included authorization to search image files.  Moreover, the Government argues that if there was not probable cause, the good faith exception applies.  Mr. Hannah argues that there was no probable cause and the good faith exception does not apply.

Further, he argues that, even if the face of the warrant authorized the search under one of the government's two arguments, a <u>Franks</u> hearing is needed because of the omissions from the Warrant One Affidavit. The Court agrees that Warrant One did not grant probable cause to search image files for either drug evidence of child pornography evidence. Further, the Courts finds that Mr. Hannah has meet his burden for a <u>Franks</u> hearing to determine whether law enforcement's reliance on the search warrant was in good faith given the omissions.

### A. Warrant One Did Not Authorize a Search of Image Files for Drug Evidence.

The Court respectfully disagrees with the Report and Recommendation and finds that law enforcement's viewing of image files was not within the scope of the warrant's authorization to search for drug related evidence. Warrant One authorized, in part, a search of the Hannah Phone and SD card for "[a]ny and all evidence of the distribution and manufacturing of illegal drugs, including but not limited to e-mails, texts, word documents, private messages, and call logs." Warrant One Complaint, at 000019. Nothing in the Warrant One Complaint gave any indication of what

type of evidence of distribution and manufacturing of illegal drugs
they expected to find on the Hannah Phone or SD card, and did not
mention any reason why images or video files would be relevant.
The Government argues that, this portion authorized a search of
pictures and videos because it authorized a search for "any and all
evidence," and, while there was a list of specific types of files, the
list was non-exhaustive due to the phrase "including but not limited
to."  Mr. Hannah argues that Warrant One's authorization to search
for evidence of distribution and manufacturing of illegal drugs could
not have included image files.  Looking at the face of Warrant One,
either reading is plausible.  Looking at the Warrant One Complaint
and Affidavit together, however, there was no basis articulated to
search image files for evidence of drug crimes.

In United States v. Bishop, 910 F.3d 335, 337 (7th Cir. 2018),
cert. denied, 139 S. Ct. 1590 (2019), the Seventh Circuit considered
a similar warrant that authorized a search of the defendants cell
phone for:

> any evidence (including all photos, videos, and/or any
> other digital files, including removable memory cards) of
> suspect identity, motive, scheme/plan along with DNA
> evidence of the crime of Criminal Recklessness with a
> deadly weapon which is hidden or secreted [in the

cellphone or] related to the offense of Dealing illegal
drugs.

Id. at 336.  The defendant in Bishop argued that the warrant was
too general "because it authorized the police to rummage through
every application and file on the phone and left to the officers'
judgment the decision which files met the description."  Id.  The
Seventh Circuit agreed that the warrant authorized law enforcement
to look at every document on the phone, but found that the warrant
was still valid and sufficiently specific because it limited "the things
being looked for by stating what crime is under investigation."  Id.
The Seventh Circuit noted that "[c]riminals don't advertise where
they keep evidence."  Id.  Accordingly, "a warrant authorizing a
search for documents that will prove a crime may authorize a
search of every document the suspect has, because any of them
might supply evidence."  Id.

Bishop and other circuit case law certainly support the
Government's view that a search of a cell phone for evidence of a
drug crime inherently authorizes a search of the entire cell phone
without becoming a general search.  The Seventh Circuit and other
circuits have repeatedly recognized that digital information can

easily be manipulated to be stored in any type of file.  See United States v. Mann 592 F.3d 779, 782 (7th Cir. 2010) (While a "warrant's description serves as a limitation on what files may be searched," criminals can easily manipulate digital files to "hide their true contents."); United States v. Bass, 785 F.3d 1043, 1049-50 (6th Cir. 2015) ("[T]he officers could not have known where this information was located in the phone or in what format"); United States v. Hill, 459 F.3d 966, 978 (9th Cir. 2006) ("Images can be hidden in all manner of files, even word processing documents and spreadsheets. Criminals will do all they can to conceal contraband, including the simple expedient of changing the names and extensions of files to disguise their content from the casual observer.").  The Bishop opinion also recognized that "[c]riminals don't advertise where they keep evidence."  910 F.3d at 336.  As "with filing cabinets, the incriminating evidence may be in any file or folder ... [T]he police did not know where on his phone Bishop kept his drug ledgers and gun videos ... This warrant was as specific as circumstances allowed."  Id. at 337-38.  An image file can be saved within a word processing document or a text message, and a screenshot of a text message can convert a text message into

an image file.  If probable cause exists to search a cell phone for evidence of a crime, this case law recognizes that a search of the entire cell phone may be both necessary and permitted.

The Supreme Court's decision in Riley also recognized that cell phones, while containing many distinct types of information, collects this information "in one place."  Given this finding, Riley's solution was to require officers to get a warrant before searching a cell phone seized incident to an arrest.  Riley, 573 U.S. at 403. Riley rejected the government's suggestion that a search incident to arrest exception could remain for "those areas of the phone where an officer reasonably believes that information relevant to the crime, the arrestee's identity, or officer safety will be discovered" because "[t]he proposed categories would sweep in a great deal of information, and officers would not always be able to discern in advance what information would be found where."  Id. at 399.

However, the Court finds that the Government's view reads too much into Bishop and the Riley dicta, and ignores the lack of articulated probable cause to search for image files for drug evidence in this case.  The search in Bishop expressly authorized a search of photos and videos on the defendant's phone.  Further, the

Bishop opinion indicates that the warrant affidavit gave some
particularized reason to believe that evidence relevant to the drug
and firearm crimes would be found in those files.  See Bishop, 910
F.3d at 338 (noting that "the police did not know where Bishop kept
his drug ledgers and gun videos.").  Whether the warrant articulated
probable cause to search the specific files—including image and
video files—authorized on the face of the warrant was not at issue
in Bishop.  Put another way, Bishop does not hold that anytime a
cell phone is to be searched for evidence of drug crimes law
enforcement can search every file on the phone without articulating
a basis to find that all file types might contain evidence.

Here, the section of Warrant One authorizing a search for
evidence related to the distribution and manufacturing of illegal
drugs did not expressly authorize searches of pictures and videos.
The expressly authorized file types are "documentary files" that Mr.
Hannah argues would generally just include text ("e-mails, texts,
word documents, private messages, and call logs").  Support for
searching these types of files is found in the affidavit of the warrant
because there was probable cause to believe that Mr. Hannah was
selling drugs.  A reasonable inference would be that he would need

to communicate with potential customers or suppliers.  Nothing in the warrant affidavit gives any reason or leads to any inference why officers would expect image or video files to contain evidence of a drug crime.

Additionally, unlike Bishop, Warrant One pertained to searches for evidence of two separate crimes.  Mr. Hannah asks the Court to look at the two separate lists of types of documents listed and constrain the use of the phrase "including but not limited to" that comes before these lists to include only files similar to those listed.  Unlike the text or documentary-type files listed in the first portion of the warrant, the specific list relating to "evidence of the acquisition and/or distribution of child pornography" included "videos, pictures, internet history, and previously deleted files." This phrasing of the warrant further supports the view that not only was there not probable cause to search images and videos files for drug evidence in this case, but the officers did not intend to search the image or video files for drug evidence.

The Tenth Circuit's decisions in United States v. Carey, 172 F.3d 1268 (10th Cir. 1999) and United States v. Burgess, 576 F.3d 1078 (10th Cir. 2009), further support the notion that image files

can only be within the scope of the warrant if they are relevant to the crime for which evidence is being searched.  In Carey, officers were permitted to search the files on a computer for "names, telephone numbers, ledger receipts, addresses, and other documentary evidence pertaining to the sale and distribution of controlled substances."  Id. at 1270.  During the search, the officer encountered JPG files, with which he was not previously familiar.  Id.  Upon viewing them, the officer discovered they were child pornography.  Instead of obtaining a new warrant, the officer proceeded to open and view many of these files and determined that they contained child pornography.  Id.  The Tenth Circuit held that "law enforcement must engage in the intermediate step of sorting various types of documents and then only search the ones specified in a warrant."  Id.  at 1275.  Because the warrant only allowed a search of documentary or text files, the search of the images was beyond the scope of the warrant.  Id. at 1276.

In Burgess, by contrast, the defendant challenged a warrant authorizing a search of "computer records" and "items of personal property" as overbroad.  Law enforcement had searched image files to "look for 'trophy photos,' *i.e.,* pictures of a 'person holding the

controlled substance in front of a stack of money,' similar to the
kinds of photographs described" in the affidavit used to support the
warrant.  576 F.3d at 1084.  While conducting this search, the
officer came upon images of child pornography.  The Tenth Circuit
agreed that "[i]f the warrant is read to allow a search of all computer
records without description or limitation it would not meet the
Fourth Amendment's particularity requirement."  However, the
Tenth Circuit found that "the warrant authorize[d] such a search
and provide[d] context for determining its scope."  Id. at 1091.
Specifically, the search "was limited to evidence of drugs and drug
trafficking and, as it relates to the computer, was limited to the
kind of drug and drug trafficking information likely to be found on a
computer, to wit (as the warrant says): 'pay-owe sheets, address
books, rolodexes' and 'personal property which would tend to show
conspiracy to sell drugs.' . . .The latter could reasonably include
'trophy photos.'"  Id.  Further, the Tenth Circuit found that the
affidavit could be used to aid in the interpretation of the term
"computer records" and the affidavit "explicitly included
'photographs of coconspirators or photographs of illegal narcotics'
among the types of items to be included in the requested search.

Id.  Accordingly, as in Bishop, the warrant in Burgess authorized law enforcement to view images and articulated a reason why a search of images was reasonable.

Mr. Hannah's position also draws support from the recent Fifth Circuit case United States v. Morton, 984 F.3d 421 (5th Cir. 2021), reh'g en banc granted, opinion vacated, No. 19-10842, 2021 WL 1990794 (5th Cir. May 18, 2021).  Notably, this opinion has now been vacated and rehearing en banc was granted.  In the now-vacated opinion, the Fifth Circuit held that probable cause was required to search each "place" on a cell-phone, with "places" including "his contacts, his call logs, his text messages, and his photographs."  Id. at 427.  The Fifth Circuit found that a "specific factual basis" must be included "in the affidavit that connects each cellphone feature to be searched to" the relevant crime.  Id.  While rehearing en banc has been granted, in part because the Government argued that the basis for the holding had not been briefed, the Court still finds the reasoning persuasive in this case, especially in light of the other precedent mentioned.

Here, while the Government and the Report and Recommendation listed numerous reasons why evidence of the

distribution and manufacturing of illegal drugs might be found in pictures or videos, no such reasons appeared within the Warrant One Complaint or affidavit.  Accordingly, the Court finds that the portion of Warrant One authorizing a search of evidence of the distribution and manufacturing of illegal drugs did not authorize law enforcement to search non-text based/ non-documentary files such as images or videos.

### B. Warrant One did Not Provide Probable Cause to Search for Evidence of Child Pornography

Judge Schanzle-Haskins' Report and Recommendation did not reach the question of whether the Warrant One Complaint provided probable cause to search for evidence of acquisition and/or distribution of child pornography, but consideration of the issue is necessary in light of the Court's conclusion above.  Individuals have a reasonable expectation of privacy in the data stored on cell phones and officers are generally required to secure a warrant before searching data on cell phones.  Riley v. California, 573 U.S. 373, 386, 134 S. Ct. 2473, 2485 (2014).  The Fourth Amendment to the United States Constitution provides, in relevant part, "[n]o warrants shall issue, but upon probable cause, . . . and particularly

describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

"Probable cause is not a high standard. It simply means there is a reasonable likelihood evidence of wrongdoing will be found." United States v. Schenck, No. 20-2353, 2021 WL 2767321, at *2 (7th Cir. July 2, 2021). A neutral magistrate judge must make the probable cause determination and must find that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 214, 103 S. Ct. 2317, 2320 (1983). The job of the "reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id.

"Where an affidavit is based primarily on tips from an informant, probable cause can be shown based on the totality of the circumstances." United States v. Clark, 935 F.3d 558, 564 (7th Cir. 2019). These circumstances include: (1) the level of detail the informant provided; (2) the extent to which the informant's knowledge is based on firsthand observation; (3) the degree of corroboration by law enforcement or other sources; (4) the time between the events reported and the warrant application; and (5)

whether the informant appeared or testified before the magistrate. United States v. Glover, 755 F.3d 811, 816 (7th Cir. 2014). No one factor is dispositive; a deficiency in one may be compensated by a strong showing in another. United States v. Brack, 188 F.3d 748, 755 (7th Cir. 1999). When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit. United States v. Peck, 317 F.3d 754, 755 (7th Cir. 2003).

Here, the Government concedes that the portion of the Warrant One affidavit authorizing the search for evidence of child pornography was "sparse." To support a search for evidence of child pornography, the affidavit states that:

> After describing the meth cook operation, Stogsdill informed Werts she had found pictures of young naked girls on her phone. She said Hannah obtains images on her phone and then sends them to his phone. According to Stogsdill Hannah uses the wireless connection at the Casey's parking lot to accomplish this.
>
> ***
>
> Stogsdill gave consent to search her phone on the 14th of March, but all data had been erased. Illinois State Police technicians are currently attempting to retrieve previously deleted data on the phone.

Warrant One Complaint, at 000020.

The Seventh Circuit has repeatedly stated that a judge is not entitled to rely on an affiant's "conclusory statements characterizing" images as "child pornography."  See United States v. Weatherman, 702 Fed. Appx. 452, 454 (7th Cir. 2017).  Instead, a judge "must either examine the images or evaluate detailed verbal descriptions."  Id. at 455 (citing Clark, 668 F.3d at 941).  Mr. Hannah argues that the magistrate judge was required to view the photos or evaluate Werts' detailed descriptions.  However, the judge or law enforcement is not required to see the photographs; it is only required that a detailed description of the photographs be included in the warrant affidavit from a reliable source who did view the photographs.  See, e.g., Schenck, 2021 WL 2767321 at *4 (affidavit quoted defendant's friend's description of photographs that had allegedly been sent to him by defendant).

However, Mr. Hannah is correct that the description of the pictures as ones with "young naked girls" is far from detailed.  It actually does not even make the "conclusory" leap that the photographs were of child pornography.  From this statement alone, it is not clear that Stogsdill thought the photographs were of children or pornographic in nature.  Law enforcement could easily

have asked Stogsdill for more information and to give an estimate of the age and whether and why she thought the images were pornographic.  Given the evidence recovered, she probably could have provided more details.  But the description of photographs as of "young naked girls" does not provide enough detail for a magistrate judge (or law enforcement) to conclude that the photographs observed were child pornography.  For a photograph to constitute child pornography, it must portray "sexually explicit conduct," 18 U.S.C. § 2251(a), which, as relevant here, is defined to include the "lascivious exhibition of the genitals or pubic area of any person," 18 U.S.C. § 2256(2)(A)(v).  The definition under Illinois law is similar.  Not every nude photograph qualifies as a lascivious one. United States v. Griesbach, 540 F.3d 654, 656 (7th Cir.2008) (collecting cases); see also United States v. Johnson, 639 F.3d 433, 439 (8th Cir.2011) (discussing examples of non-lascivious nude photographs).  Stogsdill's statement was not sufficiently detailed for the magistrate judge to find that she saw child pornography.

However, "a search warrant will not be invalid simply because the supporting affidavit lacks a reproduction of the image or a sufficient description.  Rather, a reviewing court may look to the

other facts contained in the affidavit to see if those facts could

establish probable cause without the conclusory references to child

pornography." United States v. Weatherman, 702 Fed. Appx. 452,

455 (7th Cir. 2017)(citing Clark, 668 F.3d at 940–41).  Here, the

Government argues that other facts support probable cause.  While

the description of the photographs is lacking and does not by itself

give probable cause, the description need not be disregarded

entirely.  Stogsdill voluntarily raised the concern that she had

found these images on Mr. Hannah's phone and the description,

while barebones, supports an inference that the images might

potentially have been child pornography.  Moreover, the

Government points to the methods Stogsdill stated Mr. Hannah

used to obtain the image, which the Government argues

"demonstrates a consciousness of guilt" by Mr. Hannah: "Hannah

obtains images on [Stogdill's] phone and then sends them to his

phone. According to Stogsdill[,] Hannah uses the wireless

connection at the Casey's parking lot to accomplish this."  Warrant

One Complaint, at 000020.  It would be reasonable to infer from

these facts that Mr. Hannah was intending to obscure what he was

downloading from being connected to him.  Nonetheless, while

these two facts and the possible inferences that can be drawn from them may give rise to the possibility that evidence of wrongdoing will be found, the Court finds that they fall short of establishing "a reasonable likelihood evidence of wrongdoing will be found."

### C. Mr. Hannah is Entitled to a Franks Hearing.

The Government argues that, even if the search of the images was not covered under the search for drug evidence and even if probable cause did not exist to search for child pornography, that the good faith exception should apply.  Due to Judge Schanzle-Haskin's conclusion that the images were covered by a valid search, he did not reach this issue in his Report and Recommendation.

Pursuant to United States v. Leon, 468 U.S. 897 (1984), the Fourth Amendment's exclusionary rule does not apply to evidence obtained by law enforcement officers acting in reliance on a search warrant issued by a detached and neutral magistrate.  "Judicial officers have the responsibility to determine whether there is probable cause to issue a warrant; police officers should not be expected to question that determination."  United States v. Harju, 466 F.3d 602, 606 (7th Cir. 2006) (internal citations omitted).  A police officer's decision to obtain a warrant is *prima facie* evidence

that he was acting in good faith, and a defendant bears the burden of rebutting that presumption.  Id. at 607; accord, United States v. Otero, 495 F.3d 393, 398 (7th Cir. 2007).  A defendant can rebut this presumption "only by showing that the issuing judge abandoned his role as a neutral and detached arbiter, that the officers were dishonest or reckless in preparing the supporting affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it."  United States v. Mykytiuk, 402 F.3d 773, 777 (7th Cir. 2005).

Here, Mr. Hannah does not allege that the issuing judge abandoned his role as a neutral and detached arbiter.  However, Mr. Hannah argues that the affidavit was so lacking in probable cause that no officer could have relied on it and that a Franks hearing is warranted to determine whether the officers were dishonest or reckless in preparing the supporting affidavit.

1.  The affidavit was not so lacking in probable cause that no officer could have relied on it.

"Suppression of evidence is not an appropriate remedy for a deficient search warrant where the agent who executed the warrant did so with a good-faith belief that the warrant was supported by

probable cause." <u>Leon</u>, 468 U.S. at 926.  Mr. Hannah argues that

the "barebones" affidavit is so lacking in probable cause that no

reasonable person could have relied on it.  If Warrant One only

authorized a search for evidence of child pornography, Mr.

Hannah's argument might have more force.  However, the analysis

here is more nuanced.  Even if the affidavit were so barebones with

regard to probable cause to search for child pornography that no

reasonable person could have relied on it, the affidavit on its face

had sufficient probable cause to search for evidence of the

distribution and manufacturing of illegal drugs.  Given the

confusing state of the caselaw regarding the scope of an authorized

search of a cell phone, an officer could have "harbored an

objectively reasonable belief in the existence of probable cause" to

search the images for evidence of the distribution and

manufacturing of illegal drugs.  Accordingly, the Court finds that

Mr. Hannah has failed to rebut the good faith presumption with

regards to the face of the affidavit itself.

2. <u>However, Mr. Hannah is entitled to a *Franks* Hearing to</u>
   <u>determine whether officers were dishonest or reckless in</u>
   <u>preparing the supporting affidavit.</u>

Mr. Hannah also argues a <u>Franks</u> hearing is warranted due to material omissions in the affidavit about Stogsdill's credibility. Magistrate Judge Schanzle-Haskins found that no <u>Franks</u> hearing was needed because Mr. Hannah "does not challenge the sufficiency of the probable cause to support the Warrant 1 authorization to search for evidence of distribution and manufacture of illegal drugs." In Mr. Hannah's objections, however, he argues that he also challenges the sufficiency of the probable cause to support the drug evidence search. While Mr. Hannah's original motion did not clearly make this argument, he is correct that his reply made clear that he was making such an argument. <u>See</u> Reply at 36 (d/e 33) ("Mr. Hannah certainly does not concede that these material omissions of fact would not have affected the judge's decision to issue this search warrant on any grounds. If Werts had presented information to the issuing judge that Tracy Stogsdill had an extensive criminal history regarding both methamphetamine and crimes of dishonesty, as well as a demonstrated history of making false reports about Tim Hannah in the past, there is a high probability that the judge would not have issued this warrant to search for anything solely on the basis of statements provided by

Tracy Stogsdill, as there is no probable cause in the entire affidavit independent of her.").  Accordingly, the Court will address the argument here.

Officers are not entitled to rely on the <u>Leon</u> good faith doctrine when officers were dishonest or reckless in preparing the supporting affidavit due to material omissions about Stogdill's credibility.  A defendant is entitled to a <u>Franks</u> evidentiary hearing to determine whether a warrant was valid when "a defendant makes a substantial preliminary showing that the police procured a warrant to search his property with deliberate or reckless misrepresentations in the warrant affidavit, and where such statements were necessary to the finding of probable cause."  <u>United States v. McMurtrey</u>, 704 F.3d 502, 504 (7th Cir. 2013) (<u>citing</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S.Ct. 2674 (1978)).

The parties agree there were omissions in the affidavits.  Werts did not include in the affidavit that Stogsdill had previously been convicted of two felonies and two misdemeanors involving crimes of dishonesty.  The affidavit did not include the fact that on March 14, 2016 Stogsdill conducted a factory reset on her phone after being asked and consenting to give her phone to law enforcement and

after being told not to erase anything from the phone.  When Werts

asked whether she conducted a factory reset, Stogsdill confirmed

that she conducted a factory reset because Werts told her that

anything erased from the Stogsdill Phone could be recovered.

Stogsdill said she did not want to go to jail.  Werts also did not

mention the prior 2015 incident in which Stogsdill brought him the

NEXTbook.  The records indicate that the NEXTbook and compact

disc made were analyzed by CERU between January 27, 2016 and

March 21, 2016, and the exhibits and report were not received back

from CERU until March 23, 2016.  Id.  Accordingly, the Court finds

that Werts could not have seen the report prior to applying for the

first warrant at issue in this case.  However, he still would have

known that Stogsdill had made a prior allegation regarding Mr.

Hannah and that an initial review of the NEXTbook had been

inconclusive.

    a. Materiality to Probable Cause Determination:  A Franks

hearing is not "required every time some substantial adverse

information about an informant's credibility is omitted from a

probable cause affidavit."  Clark, 935 F.3d at 565.  When law

enforcement has sufficiently corroborated the informant's

information, "the omission of facts pertaining to the informant's

credibility may not be material."  Id.  In Clark, the Seventh Circuit

summarized previous cases that had found such omissions

immaterial:

> In United States v. Musgraves, for example, the police
> omitted from the affidavit important and damaging
> credibility information about one informant. 831 F.3d
> 454, 459-60 (7th Cir. 2016). We affirmed the denial of
> a Franks hearing because a second affidavit included
> information from a second informant without credibility
> problems who had provided the police with specific and
> timely information about the suspect's drug trafficking to
> support the warrant. Id. at 460-61.

> In United States v. Bradford, we also held that the
> affidavit's omission of facts damaging to an informant's
> credibility did not require suppression of evidence seized
> with a search warrant for drug and weapons trafficking.
> 905 F.3d at 503-05. In Bradford, the application failed to
> disclose that the informant had three felony convictions,
> was on probation, and was being paid for his help. Id. at
> 502. But his information was fresh, specific, and
> corroborated by his having carried out controlled drug
> buys from the target and by specific information from
> another informant without his credibility problems. Id. at
> 504

> In United States v. Hancock, we affirmed the denial of
> a Franks hearing in similar circumstances. 844 F.3d at
> 710. An informant provided fresh, detailed information
> about a suspect's drug sales, but the affidavit for the
> warrant left out information about the informant's own
> criminal history and the fact that he was in custody
> when he provided the information. Id. at 705-06. We
> found that the omissions were not material because the

warrant application included extensive corroboration of the suspect's drug trafficking and intimidation of witnesses. That corroboration came from other informants, a search of a cellular telephone showing texts referring to drug deals, and from an earlier interview with the suspect himself. The quantity and quality of corroborating information meant that the omitted adverse credibility information about one informant did not require a <u>Franks</u> hearing. <u>Id</u>. at 707-10.

<u>United States v. Clark</u>, 935 F.3d 558, 565 (7th Cir. 2019).

In <u>Clark</u>, however, the Seventh Circuit found that the facts there were distinguishable.  A warrant had been issued to search a hotel room for evidence of drug trafficking based on a tip from an unidentified informant that "earlier that day, he had driven someone to a parking lot adjacent to the Baywalk Inn in Superior to buy heroin from a black male called 'Big Mike,' the brother of 'Toonchie.'" <u>Id.</u> at 564.  The officer had corroborated the tip by surveilling the parking lot and observing a black man leave the hotel and enter and then exit at least five cars in the hotel parking lot.  The officer had also learned that a guest in room 203 was the only one who had paid both in cash and was staying one night, behavior that the officer said was typical of drug trafficking based on his training and experience.  <u>Id.</u>  He had also spoken to a woman "who said that her daughter was a heroin addict and that she (the

mother) had followed a man she suspected of drug-dealing to Room
203." Id.  The affidavit did not include that "[t]he informant was
being paid for his services.  He also had two pending criminal
charges against him, fifteen prior convictions, and a history of
opiate and cocaine abuse, and he was hoping to receive a reduced
sentence in exchange for his cooperation." Id.  The Seventh Circuit
found that because the warrant application did not include any of
the information regarding the informant's credibility, and because
the "foundation for probable cause independent of the credibility
was so meager in this case that the credibility of the informant was
material for Franks purposes." Id. at 566.  See also, United States
v. Glover, 755 F.3d 811, 818 (7th Cir. 2014)("The probable cause
affidavit here left the magistrate unable to fulfill his role as a
neutral arbiter and therefore provided an insufficient basis for
finding probable cause to support the search warrant.").

Here, like in Clark, none of the adverse information about
Stogsdill was included in the affidavit.  Aside from the statements of
Stogsdill, there was no corroborating evidence regarding the child
pornography.  Stogsdill also provided the majority of the probable
cause foundation for the search of drug evidence.  Without

Stogsdill's statement, the basis for probable cause in the warrant is that (1) "maintenance workers observed a fire in the morning [of March 8, 2016], and saw a white male, white female, both approximately 40 years old with a black and white dog leaving the area of the fire in a dark Chevrolet four door sedan;" and (2) that Mr. Hannah admitted to being in the area of the park with Stogsdill and the dog in the maroon Chevrolet Cobalt where the fire took place, but denied burning anything.  Like <u>Clark</u>, the independent foundation for probable cause was "meager," making Stogsdill's credibility material for <u>Franks</u> purposes.  <u>See also United States v. Glover</u>, 755 F.3d 811, 820 (7th Cir. 2014) (highlighting that the omission of credibility information was "clearly material" because it "undermined the issuing magistrate's role in the probable cause determination.").

     b. <u>Deliberate or Reckless Omissions:</u> Mr. Hannah also needs to show that the omissions were deliberate or reckless.  "An officer's omission from the probable cause affidavit of known and substantial adverse information about the informant's credibility is sufficient to support a reasonable inference of recklessness." <u>United States v. Glover</u>, 755 F.3d 811, 820 (7th Cir. 2014) (omission

of credibility information regarding informant's criminal history, expectation of payment, and gang affiliation).  The omission of important information regarding an informant's credibility "*permits* (but does not require) an inference that the omissions were deliberate or reckless.  If the showing of probable cause in the warrant application depended on the credibility of the informant, that permissible inference should be enough to obtain a <u>Franks</u> hearing."  <u>Clark</u>, 935 F.3d at 566.  This case cannot be meaningfully distinguished from this precedent: Werts omitted material adverse credibility information about Stogsdill, which permits an inference that these omissions were made deliberately or recklessly.  This permissible inference is enough to obtain a <u>Franks</u> hearing.

### D. The Court Defers Ruling on the Validity of Warrants Two, Three, and Four.

The probable cause for Warrants Two, Three, and Four relied on the fruits of the search in Warrant One.  Accordingly, the Court

finds that whether the evidence obtained in Warrants Two and Three should be suppressed is tied to whether the evidence obtained Warrant One should be suppressed. The Court, therefore, delays ruling on whether the evidence obtained in these searches should be suppressed until after the <u>Franks</u> hearing.

Mr. Hannah also argues that Warrant Four is invalid based on the 895-day delay in seeking Warrant Four. Judge Schanzle-Haskins recommends suppressing Warrant Four for this reason. In light of the Superseding Indictment, it is not clear that the Government intends to rely on evidence obtained in Warrant Four, so this portion of the motion may be moot. The Court will delay ruling on this issue, if necessary, after the <u>Franks</u> hearing.

## V. CONCLUSION

For the reasons above, the Court ADOPTS IN PART and REJECTS IN PART the recommendations in Magistrate Judge Schanzle-Haskins' Report and Recommendation (d/e 52). Defendant's Motion to Dismiss (d/e 21) is DENIED, with leave to refile his motion for an adverse inference instruction at trial if

warranted.  Defendant's request for a hearing pursuant to <u>Franks v.</u>
<u>Delaware</u>, 438 U.S. 154 (1978), is GRANTED.

**ENTERED: July 27, 2021.**

**FOR THE COURT:**

          *s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**